## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SOMERSET PHARMACEUTICALS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-279 (GMS) |
| | ) | |
| JON W. DUDAS, in his official capacity | ) | |
| as Under Secretary of Commerce for | ) | |
| Intellectual Property and Director of the | ) | |
| United States Patent and Trademark Office, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DIRECTOR'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

On May 22, 2007, Somerset Pharmaceuticals, Inc. ("Plaintiff") filed a Complaint against Jon W. Dudas in his official capacity as Under Secretary of Commerce for Intellectual Property and Director of the U.S. Patent and Trademark Office ("USPTO") in this Court, (D.I. 1). Plaintiff accompanied its Complaint by a Motion for Preliminary Injunction Pursuant to Fed. R. Civ. P. 65(a), (D.I. 2).[1]  Plaintiff moved this Court to order the USPTO to decide and grant its Application for Interim Patent Extension Under 35 U.S.C. § 156(e)(2) ("Interim Extension Application") now pending before the USPTO.

At the outset, the USPTO contends that Plaintiff actually seeks mandamus relief, despite styling its motion as one for injunctive relief. Because the USPTO is in the process of preparing

---

[1]    The USPTO refers to Plaintiff's Motion for Preliminary Injunction, (D.I. 2), as "Pl.'s Mot. at __" and to Plaintiff's Brief in Support of Plaintiff's Motion For Preliminary Injunction, (D.I. 5), as "Pl.'s Br. at __." Similarly, the USPTO refers to the exhibits attached to Plaintiff's Brief as "Pl.'s Ex. at ___." The USPTO refers to its own exhibits submitted herewith as "Ex. at ___."

a final decision on Plaintiff's Interim Extension Application, there is no need for this Court to order the mandamus relief requested. Hence, Plaintiff's motion should be denied.

## I.    GENERAL BACKGROUND

Plaintiff filed an application for a patent term extension under 35 U.S.C. § 156 with the USPTO to extend the term of a patent allegedly protecting a drug product for which it recently received approval from the Food and Drug Administration ("FDA"). Plaintiff subsequently filed an application for an interim extension under § 156 with the USPTO to temporarily extend the term of its patent in the event its patent expires before the USPTO issues a decision on its earlier patent term extension application. Before delving further into details of this case, the USPTO sets forth an explanation of the mechanics of § 156. Such discussion is important to the case because of the complexity of the various provisions in § 156.

## A.    Patent Term Extension Applications Under 35 U.S.C. § 156(a)

Congress enacted the Drug Price Competition and Patent Term Restoration Act of 1984, commonly referred to as the Hatch-Waxman Act, to give patent owners the right to extend the term of a patent covering a drug product to account for the time that drug product was subject to regulatory review by the FDA. Pub. L. No. 98-417, 98 Stat. 1585 (1983) (codified at 21 U.S.C. § 355(b), (j), (l); 35 U.S.C. §§ 156, 271, 282). That act is codified in several provisions of § 156.

To obtain a patent term extension under § 156, an applicant must file an application with the USPTO. Section 156(a) sets forth several requirements for eligibility, one of which is that the drug product represents the first commercial marketing or use of the product under the

2

provision of law under which regulatory review occurred, 35 U.S.C. § 156(a)(5)(A).[2]  Section

156(e)(1) charges the Director of the USPTO with determining whether a patent satisfies the

eligibility requirements of § 156(a).  See 35 U.S.C. § 156 (e)(1).  That determination frequently

requires input from the FDA, which has expertise and maintains records regarding the eligibility

requirements of § 156(a) that the USPTO does not have.  Thus, the USPTO and the FDA have

entered into an agreement under which the USPTO solicits input from the FDA as part of its

normal business practice.  See Ex. 1, Memorandum of Understanding Between the USPTO and

the FDA, 52 Fed. Reg. 17830-17832, 17831 (May 12, 1987) (providing that USPTO may request

the FDA's assistance in writing with respect to certain eligibility requirements because the FDA

"possesses expertise and records regarding the last four [requirements] and has certain direct

responsibilities under 35 U.S.C. § 156 for determining the length of the regulatory review

period.") ("MOU").

  After the USPTO decides that a patent is eligible for extension, taking into account the

FDA's input, the FDA is then charged under § 156(d)(2)(A) with determining the regulatory

review period, which represents the amount of time that a patent may be extended subject to

exceptions for due diligence.  See 35 U.S.C. § 156(d)(2)(a).  The FDA publishes its regulatory

review period determination in the Federal Register for a period of 180 days to permit public

---

[2]      There are five additional eligibility requirements for a drug product: (1) the patent
for which extension is sought must claim the drug product, a method of using the product, or a
method of manufacturing the product, 35 U.S.C. § 156(a) (preamble); (2) the patent has not
expired before an application for extension is filed, (§ 156 (a)(1)); (3) the patent has not
previously been extended under § 156(e)(1), (§ 156 (a)(2)); (4) the application for extension is
submitted by the owner of record of the patent or its agent and meets the requirements of
§ 156(d) (setting forth the information required to be in the application), (§ 156 (a)(3)); and
(5) the application for extension of the term of the patent was submitted to the USPTO within the
sixty-day period beginning on the date the product received the FDA's approval for commercial
marketing, (§ 156 (d)(1)).

challenge. See id.   Absent any challenges, the USPTO can issue a certificate of patent term extension for the patent. See 35 U.S.C. § 156(e)(1).

**B.     Interim Extension Applications Under 35 U.S.C. § 156(e)(2)**

Because the USPTO and the FDA play sequential roles in the patent term extension process and because of the 180-day public challenge period, the patent term extension decision process may be lengthy.   To alleviate the potential problem of a patent expiring while that process is ongoing, Congress provided for an interim patent extension in § 156(e)(2).   This type of interim extension may extend the life of a patent up to one year when the USPTO has not issued a decision on an applicant's patent term extension application at the time the patent would normally expire by operation of law. 35 U.S.C. §156(e)(2).

## II.     FACTUAL BACKGROUND

1.     On February 27, 2006, the FDA approved under 21 U.S.C. § 355 Plaintiff's drug product EMSAM® (selegiline transdermal system) patches, which contain selegiline as the single active ingredient, for the treatment of depression in adults. Pl.'s Ex. 2 at Ex. B.

2.     On April 27, 2006, Plaintiff timely filed an "Application for Patent Term Extension Under 35 U.S.C. § 156" ("Patent Term Extension Application") with the USPTO. In that application, Plaintiff seeks to extend the term of its Reissue Patent No. 34,579 ("the '579 patent"), which Plaintiff alleges offers patent protection for EMSAM®.   The length of the extension sought is based upon the amount of time Plaintiff spent obtaining regulatory approval for EMSAM®.  Without an extension, the '579 patent will expire by operation of law on August 18, 2007. Pl.'s Ex. 2.

3.     On December 22, 2006, after reviewing Plaintiff's Patent Term Extension Application, the USPTO sent a letter to the FDA pursuant to the MOU indicating that the

USPTO did not believe that the '579 patent was eligible for a patent term extension because not all of the statutory prerequisites for extension set forth in § 156(a) were met. Pl.'s Ex. 3. Specifically, the USPTO stated that it did not believe that EMSAM® represented the first commercial marketing or use of the active ingredient selegiline as required under § 156(a)(5)(A) because the USPTO understood that the hydrochloride salt form of selegiline had been previously approved by the FDA under 21 U.S.C. § 355. Id. at ¶ 3. The USPTO sought help from the FDA in verifying that its understanding was correct. Id. at ¶ 2.

4.      On February 2, 2007, counsel for Plaintiff met with representatives of the USPTO to discuss Plaintiff's Patent Term Extension Application. Pl.'s Ex. 4a. During the course of that discussion, counsel for Plaintiff discussed the possibility of extending the term of the '579 patent under 35 U.S.C. § 156(e)(2) for an interim period of up to one year to prevent it from expiring before a decision on its Patent Term Extension Application. Id. at 7; Pl.'s Ex. 4b.

5.      On February 21, 2007, Plaintiff filed its Interim Extension Application under § 156(e)(2) with the USPTO, seeking a one-year interim extension of the term of the '579 patent, i.e., until August 18, 2008. Pl.'s Ex. 5.

6.      On April 9, 2007, Plaintiff submitted a "Communication Regarding Application for Interim Patent Term Extension Under 35 U.S.C. § 156(e)(2)" with the USPTO, reiterating its position that the '579 patent is eligible for an interim extension under § 156(e)(2). Pl.'s Ex. 6.

7.      Between February 20, 2007 and May 21, 2007, counsel for Plaintiff contacted various employees of the USPTO several times, requesting updates on the status of Plaintiff's Patent Term Extension Application and Plaintiff's Interim Extension Application. Ex. 2, Declaration of Kathleen Kahler Fonda ("Fonda Decl.") at ¶¶ 6, 7; Pl.'s Ex. 8, Sampson Decl. at ¶ 10 (identifying thirteen telephone calls to the USPTO). In the course of those conversations,

the USPTO repeatedly informed counsel for Plaintiff that the USPTO, in accordance the MOU, was awaiting a response from the FDA to the USPTO's letter dated December 22, 2006, regarding whether EMSAM® represents the first commercial marketing or use of the active ingredient selegiline. Ex. 2, Fonda Decl. at ¶ 6. The USPTO also shared that it was actively working on deciding Plaintiff's two applications. Id.

8.    On May 22, 2007, Plaintiff filed a Complaint against the USPTO accompanied by the instant Motion for Preliminary Injunction.

## III.    STATUS OF PLAINTIFF'S PATENT TERM EXTENSION APPLICATION AND PLAINTIFF'S INTERIM EXTENSION APPLICATION

Although the USPTO ordinarily issues two separate decisions, the USPTO has decided to issue a single final decision in this case addressing Plaintiff's Patent Term Extension Application and its Interim Extension Application. Since the '579 patent remains in force for another two months, the USPTO prefers to issue a combined decision, rather than a decision on Plaintiff's Interim Extension Application followed by a decision on Plaintiff's Patent Term Extension Application after receiving the FDA's input. The USPTO believes that a single final decision makes sense for two reasons. First, the USPTO has already begun preparing that single final decision, Ex. 2, Fonda Decl. at ¶ 8, and it is more efficient to issue one as opposed to two decisions. Second, the USPTO anticipates issuing that decision soon after the FDA responds to the USPTO's inquiry of December 22, 2006, and before the '579 patent expires on August 18, 2007. Id. Accordingly, the USPTO sees no need to decide Plaintiff's applications in a piecemeal way since the USPTO expects to be able to decide both soon.

Before being sued by Plaintiff on May 22, 2007, the USPTO had contacted the FDA regarding a response to the USPTO's inquiry letter. Ex. 4, Declaration of Mary C. Till at ¶ 3; Ex. 2, Fonda Decl. at ¶ 9. And, after being sued, the USPTO notified the FDA of the litigation

6

and the FDA indicated that it was investigating the issues and would send a reply as soon as possible. Ex. 2, Fonda Decl. ¶ 9; Ex. 3, Declaration of Jane A. Axelrad at ¶ 5. After the FDA responds, the USPTO will promptly complete and issue its decision. Ex. 2, Fonda Decl. at ¶ 8.

## IV.    PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### A.    Plaintiff Incorrectly Styled Its Motion As One For A Preliminary Injunction When It Actually Seeks Mandamus Relief

While Plaintiff styled its motion as one for a "preliminary injunction" under Fed. R. Civ. P. 65(a) and made arguments premised on the four factors that courts traditionally apply in deciding whether to grant a preliminary injunction, Plaintiff does not seek to enjoin the USPTO from any action adverse to Plaintiff as most commonly occurs in connection with an injunction. See, e.g., Acierno v. New Castle County, 40 F.3d 645, 647 (3d Cir. 1994) ("A primary purpose of a preliminary injunction is maintenance of the status quo until a decision on the merits of a case is rendered."). Rather, Plaintiff seeks the opposite kind of relief; it seeks to compel the USPTO to act, specifically, to decide its Interim Extension Application. In its motion, Plaintiff requests this Court to "[e]nter an order compelling the Director to immediately decide upon Plaintiff's Application for Interim Extension of the '579 Patent; and [e]nter an order compelling the Director to immediately grant an interim extension of the term of the '579 Patent for a period of one year from the expiration date of the patent, until August 18, 2008, or until a final, non-appealable judicial decision of the eligibility of Somerset's Application for Patent Term Extension of the '589 [sic] Patent is obtained, whichever is earlier . . . ." (Pl.'s Mot. at ¶¶ 4 & 5) (Emphases added). Such a request compelling action of a government agency rings of mandamus relief and not injunctive relief. See 28 U.S.C. § 1361 ("The district courts shall have

original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.").

The USPTO's reading of Plaintiff's motion as substantively seeking mandamus relief is confirmed by Plaintiff's Proposed Order, its supporting Brief, and even its Complaint. In these documents, Plaintiff consistently requests this Court to order the USPTO to act. In its Proposed Order, Plaintiff suggests the Court order: "The PTO Director shall immediately decide upon Plaintiff's Application for Interim Extension of the '579 Patent." Pl.'s Proposed Order at ¶ 2 (emphasis added). Similarly, in its Brief, Plaintiff states in the first full sentence under the "Nature and Stage of the Proceedings" Section, that "[t]his Rule 65 motion for preliminary injunction and the underlying lawsuit are to 'compel agency action unlawfully withheld or unreasonably delayed.'" Pl.'s Br. at 1 (emphasis added). In the "Conclusion" Section, Plaintiff echoes the same: "The PTO has unlawfully withheld action on and effectively denied [Plaintiff's] Application for Interim Extension. . . . " Pl.'s Br. at 21. And, in its Complaint, which accompanied its motion, Plaintiff states in the first sentence: "Plaintiff brings this action to secure relief in the nature of mandamus compelling the Director of the United States Patent and Trademark Office ("PTO") to act upon the Plaintiff's application for a one year interim extension . . . ." Compl. at 1 (emphasis added). Accordingly, because Plaintiff plainly and repeatedly requests this Court to compel the USPTO to act, and not enjoin any USPTO conduct, the USPTO properly treats Plaintiff's motion as seeking mandamus and not injunctive relief. The USPTO urges this Court to do the same.

**B.      Plaintiff Is Not Entitled To Mandamus Relief**

It is well established that a writ of mandamus is an extraordinary remedy to be granted

only in extraordinary cases.  Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271,

289 (1988) ("This Court repeatedly has observed that the writ of mandamus is an extraordinary

remedy, to be reserved for extraordinary situations."); Miller v. French, 530 U.S. 327, 339

(2000) (same).  The Supreme Court has set forth conditions to be established before mandamus

relief is granted: (1) the plaintiff has a clear and indisputable right to the relief sought; (2) the

defendant owes a nondiscretionary duty to do the specific act requested; and (3) the plaintiff has

no other adequate remedy.   Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 35 (1980);

Kerr v. United States District Court, 426 U.S. 394, 403 (1976) (party seeking issuance of the writ

must "have no other adequate means to attain the relief he desires" and must show that his "right

to issuance of the writ is 'clear and indisputable'"); United States v. Ferri, 686 F.2d 147, 152

(3d Cir. 1982); Maier v. Orr, 754 F.2d 973, 983 (Fed. Cir. 1985).[3]   Even when these

requirements are met, the "issuance of the writ is largely discretionary." Hahnemann Univ.

Hosp. v. Edgar, 74 F.3d 456, 461 (3d Cir. 1996).

1.      **The USPTO Is In The Process Of Deciding Plaintiff's Interim Extension Application**

Plaintiff cannot satisfy the third requirement for a writ of mandamus, i.e., that no other

adequate remedy exists.  The USPTO is actively engaged in preparing a single final decision for

Plaintiff's Interim Extension Application and its Patent Term Extension Application.  As a result,

---

[3]     The U.S. Court of Appeals for the Federal Circuit would have exclusive jurisdiction over any appeal taken from this case, since it relates to patents. 28 U.S.C. § 1295(a)(1); see e.g., Arnold P'ship v. Dudas, 362 F.3d 1338 (Fed. Cir. 2004). But, because mandamus relief is a matter of regional circuit law and not unique to patent law, the Federal Circuit would apply Third Circuit law in reviewing any appeal of the Court's mandamus ruling.  In re Regents of the Univ. of Cal., 101 F.3d 1386, 1390 n. 2 (Fed. Cir. 1996) ("For procedural matters that are not unique to patent issues, we apply the perceived law of the regional circuit.") (citation omitted).

there is no need for this Court to order the USPTO to do that which it is already in the process of doing. The USPTO's commitment to complete and issue a decision shortly after receiving the FDA's response to its inquiry of December 22, 2006 regarding Plaintiff's Patent Term Extension Application is an adequate remedy for Plaintiff. See Ex. 2, Fonda Decl. ¶ 8. Accordingly, because Plaintiff cannot show that it has no other adequate remedy, this case is hardly an extraordinary one meriting the extraordinary relief of mandamus.

Since filing Plaintiff's Interim Extension Application, counsel for Plaintiff has made numerous telephone calls to employees of the USPTO, seeking updates on the status of the application. See, e.g., Pl.'s Ex. 8, Sampson Decl. at ¶ 10 (listing thirteen telephone calls to the USPTO between February 20, 2007, and May 21, 2007, regarding "the status of [Plaintiff's] PTE Application and, in particular, about the status of its Application for Interim Extension."); Ex. 2, Fonda Decl. at ¶ 6. The USPTO has repeatedly explained to counsel for Plaintiff that it is in the process of deciding the Interim Extension Application and, upon receipt of the commercial marketing information from the FDA, the Patent Term Extension Application. See Ex. 2, Fonda Decl. at ¶ 6. Thus, when it filed the underlying suit and instant motion, Plaintiff knew very well that the USPTO is in the advanced stages of preparing the very decision it requests this Court to order the USPTO to issue.

Plaintiff argues that the USPTO is required by its own regulations to decide the Interim Extension Application within 90 days of the filing date of its Interim Extension Application (by May 21, 2007, since Plaintiff filed its Interim Extension Application on February 21, 2007). Pl.'s Br. at 7, 13. Presumably, Plaintiff is referring to 37 C.F.R. § 1.760, since that is the only regulation Plaintiff mentions in connection with its Interim Extension Application. Pl.'s Br. at 7. Plaintiff's reading of Rule 760 is, however, not correct. Rule 760 does not set any time limit

under which the USPTO must decide an applicant's interim extension application. Rather, the only possible time limit set forth in Rule 760 applies to an applicant. Rule 760 states in pertinent part: "Any such request [referring to an applicant's request for an interim extension] should be filed at least three months prior to the expiration date of the patent." 37 C.F.R. § 1.760 (2006). Therefore, under the terms of Rule 760, the USPTO was not required to decide Plaintiff's Interim Extension Application by May 21, 2007, or by any other date.[4]

Plaintiff also suggests that the USPTO has engaged in undue delay in deciding Plaintiff's Interim Extension Application. Pl.'s Br. at 11. Plaintiff's suggestion is meritless. As noted above, Plaintiff filed its Interim Extension Application on February 21, 2007. Its application thus has been pending in the Office for less than four months. This hardly amounts to undue delay, especially where the USPTO is actively deciding the application. Nor can it be said to be inconsistent with the time provisions set forth in § 156. As Plaintiff correctly notes, § 156(d)(1) requires an applicant to submit a patent term extension application within sixty days of receiving FDA approval of the drug, and § 156(d)(2)(A) requires the USPTO, once it determines the application is eligible (which is the question at issue here), to inform the FDA of an applicant's application within sixty days of receipt so that the FDA may determine the applicable regulatory review period within thirty days thereafter. Pl.'s Br. at 11. Section 156 does not, however, require the USPTO to decide an applicant's interim extension application within any time window. It instead is completely silent as to any time period for an interim extension decision. Therefore, though Plaintiff is generally correct that § 156 includes provisions relevant to the

---

[4]    Notably, the USPTO is not even required under Rule 760 to inform Plaintiff of a denial of its interim extension application. Rule 760 only requires the USPTO to inform an applicant when it grants an interim extension, stating: "The patent owner or agent will be notified when an interim extension is granted and notice of the extension will be published in the Official Gazette of the United States Patent and Trademark Office." 37 C.F.R. § 1.760 (2006).

timing of various filings, Plaintiff mischaracterizes these provisions by implying that all steps in the review process under § 156 must be completed in less than sixty days.

> **2.    It Would Be Improper For The Court To Order The USPTO To Grant Plaintiff's Interim Extension Application In The First Instance**

Plaintiff argues that the Court should order the USPTO to grant Plaintiff's Interim Extension Application.    Pl.'s Br. at 14-19.    Plaintiff's argument is misplaced.    A writ of mandamus cannot be used to instruct the defendant on how to exercise its discretion. See Wilbur v. United States, 281 U.S. 206, 218 (1930) (explaining that mandamus "is employed to compel action, when refused, in matters involving judgment and discretion, but not to direct the exercise of judgment or discretion in a particular way nor to direct the retraction or reversal of action already taken in the exercise of either."); see also Wilmot v. Doyle, 403 F.2d 811, 816 (9th Cir. 1968) (same).    Under 28 U.S.C. § 1361, such decision is to be made by the government agency in the first instance.    After that decision issues, Plaintiff may properly appeal the merits of the decision to a court under the Administrative Procedures Act.    Pre-empting the agency decision process would circumvent Congress' intent for an agency to decide the merits in the first instance.    Hence, even if this Court were inclined to order the USPTO to issue a decision on Plaintiff's Interim Extension Application, it would have to stop there and could not order the USPTO to grant that application.

**C.    Plaintiff Is Not Entitled To Injunctive Relief**

As already explained, injunctive relief is not appropriate here.    However, if the Court considers Plaintiff's motion for a preliminary injunction to be proper, Plaintiff fails to establish that it is entitled to injunctive relief.    Like mandamus relief, a preliminary injunction under Fed. R. Civ. P. 65 is an extraordinary remedy to be sparingly granted.    Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) ("Preliminary injunctive relief is 'an extraordinary

remedy' and 'should be granted only in limited circumstances.'") (citations omitted).[5]    In determining the appropriateness of issuing a preliminary injunction, a court must consider four factors: "(1) whether the movant has a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by denying the injunction; (3) whether there will be greater harm to the nonmoving party if the injunction is granted; and (4) whether granting the injunction is in the public interest." Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 171 (3d Cir. 2001).  An injunction should only issue if all four factors favor preliminary relief. S & R Corp. v. Jiffy Lube Int'l. Inc., 968 F.2d 371, 374 (3d Cir. 1992).  The burden of establishing that injunctive relief is warranted rests on the party seeking the relief. Acierno, 40 F.3d at 653.

Here, because the USPTO is in the process of deciding both Plaintiff's Patent Term Extension Application and its Interim Extension Application and anticipates issuing a single final decision soon, Plaintiff cannot show that the second factor is met, i.e., that it will be irreparably harmed if an injunction does not issue.  The USPTO has sought the FDA's input as to the commercial marketing information needed for Plaintiff's Patent Term Extension Application and, in the meantime, has begun drafting a single final decision.  See Ex. 2, Fonda Decl., at ¶¶ 3, 8.  After the FDA responds, the USPTO will issue that decision not just for Plaintiff's Interim Extension Application but also for Plaintiff's Patent Term Extension Application.

---

[5]    As in the case of mandamus relief, the Federal Circuit would apply the law of the Third Circuit in reviewing any injunction ruling made by this Court. Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891, 894 (Fed. Cir. 1998) ("The Federal Circuit has generally viewed the grant of a preliminary injunction as a matter of procedural law not unique to the exclusive jurisdiction of the Federal Circuit, and on appellate review has applied the procedural law of the regional circuit in which the case was brought.") (citation omitted); Hybritech Inc. v. Abbott Labs., 849 F.2d 1446, 1451 n. 12 (Fed. Cir. 1988) (recognizing that "purely procedural questions involving the grant of a preliminary injunction are controlled by the law of the appropriate regional circuit.") (citation omitted).

Id. at ¶ 8. Consequently, as explained above, the Court need not order a preliminary injunction compelling the USPTO to issue a decision on Plaintiff's Interim Extension Application. Given that the second preliminary injunction factor is not present, injunctive relief should not be granted in this case.

## D.     Equity Concerns

That the '579 patent will expire by operation of law on August 18, 2007—only a little more than two months from now—appears to be at the heart of Plaintiff's underlying suit and the instant motion. Pl.'s Br. at 19-20. Plaintiff is concerned that the '579 patent will expire before it can obtain final judicial review on its Interim Extension Application and its Patent Term Extension Application. Plaintiff contends that the expiration will result in "severe and irreparable" harm. Pl.'s Br. at 19. Plaintiff's contention is unavailing. In addition to the '579 patent, Plaintiff has at least two other patents providing protection for EMSAM®, namely U.S. Patent No. 7,070,808 and U.S. Patent No. 7,150,881. Plaintiff listed both of those patents in the Orange Book, and in doing so, certified that they cover EMSAM®. Ex. 5, Electronic Orange Book Listing for EMSAM®, available at http://www.accessdata.fda.gov/scripts/cder/ob/default.htm. Neither patent expires until 2018. Consequently, even after expiration of the '579 patent, Plaintiff may rely at least upon the two patents listed in the Orange Book to protect EMSAM® until 2018, thereby dispelling any claim of "severe and irreparable" harm.[6]

Finally, because final judicial review is not covered by the interim extension provisions of § 156(e)(2) and is normally not obtained in a matter of days or even a matter of a few months, it is doubtful that Plaintiff can obtain such review before the '579 patent expires on August 18,

---

[6]     Because the two listed patents issued after Plaintiff received FDA approval for EMSAM®, each would be entitled to zero days of patent term extension under §156.

2007. In fact, it is even doubtful that Plaintiff could have obtained such review if the USPTO had issued a final decision on Plaintiff's Patent Term Extension Application on the same day that Plaintiff filed that application. To explain, when Plaintiff filed its Patent Term Extension Application on February 27, 2006, the '579 patent had less than nineteen months of term remaining. The USPTO seriously doubts that Plaintiff would have been able to secure a district court decision followed by a non-appealable appellate decision within that nineteen-month window. Accordingly, Plaintiff cannot pretend that the amount of time its Patent Term Extension and Interim Extension Applications have been pending before the USPTO is the sole reason that final judicial review before the expiration of the '579 patent is not possible.

## V.    CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's "preliminary injunction" motion, (D.I. 2). A proposed order is attached.

<div style="margin-left: 40%">

COLM F. CONNOLLY
United States Attorney

BY:    _____
Patricia C. Hannigan
Assistant United States Attorney
Delaware Bar No. 2145
1007 Orange Street, Suite 700
Wilmington, DE 19899-2046
(302) 573-6277

</div>

Of Counsel:

Janet Gongola, Esquire
Office of the Solicitor
U.S. Patent and Trademark Office
(571) 272-8734

# EXHIBIT 1

# Memorandum of Understanding Between the USPTO and the FDA ("MOU")

Westlaw.

52 FR 17830-02                                                          Page 1
52 FR 17830-02, 1987 WL 134776 (F.R.)
**(Cite as: 52 FR 17830)**

NOTICES

DEPARTMENT OF HEALTH AND HUMAN SERVICES

Food and Drug Administration

[FDA 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]

Memorandum of Understanding Between the Patent and Trademark Office and the

Food and Drug Administration

Tuesday, May 12, 1987

**\*17830** AGENCY: Food and Drug Administration.

ACTION: Notice.

SUMMARY: The Food and Drug Administration (FDA) is providing notice of a memorandum

of understanding (MOU) between the Patent and Trademark Office (PTO) and FDA. The

MOU establishes procedures whereby FDA assists PTO in determining a product's

eligibility for patent term restoration and procedures for exchanging information

between FDA and PTO regarding regulatory review period determinations, due

diligence petitions, and informal FDA hearings.

DATE: The memorandum of understanding became effective September 17, 1986.

®  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

52 FR 17830-02
52 FR 17830-02, 1987 WL 134776 (F.R.)
**(Cite as: 52 FR 17830)**

FOR FURTHER INFORMATION CONTACT:Walter J. Kustka, Intergovernmental and Industry
Affairs Staff (HFC-50), Food and Drug Administration, 5600 Fishers Lane, Rockville,
MD 20857, 301-443-1583.

SUPPLEMENTARY INFORMATION: In accordance with 21 CFR 20.108(c), which states that
all agreements and memorandum of understanding between FDA and others shall be
published in the Federal Register, the agency is publishing this memorandum of
understanding.

 Dated:  May 5, 1987.

John M. Taylor,

Associate Commissioner for Regulatory Affairs.

Memorandum of Understanding Between the Patent and Trademark Office and the Food
and Drug Administration

*I. Purpose*

 This agreement establishes the procedures whereby the Food and Drug Administration
(FDA) assists the Patent and Trademark Office (PTO) in determining a product's
eligibility for patent term restoration under 35 U.S.C. 156.   It also establishes
procedures for exchanging information between FDA and PTO regarding regulatory
review period *17831 determinations, due diligence petitions and informal FDA
hearings under the law.

*II. Background*

 The patent term restoration portion of the Drug Price Competition and Patent Term

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

52 FR 17830-02
52 FR 17830-02, 1987 WL 134776 (F.R.)
**(Cite as: 52 FR 17830)**

Restoration Act of 1987 (Pub. L. 98-417) was designed to create new incentives for research and development of certain products which are subject to premarket government approval. These provisions enable the owners of patents on certain human drugs, medical devices, and food or color additives to attempt to restore to the terms of those patents some of the patent time lost while awaiting premarket government approval.

Under the patent term restoration sections of the Act, a patent which claims a human drug product, medical device, food or color additive first approved for marketing after September 24, 1984 may qualify for patent term extension. Regardless of whether the patent claims a product, a method of using a product, or a method of manufacturing a product, the applicant for a patent term extension must establish that:

(1) The patent has not expired (35 U.S.C. 156(a)(1)),

(2) The patent has never been extended (35 U.S.C. 156(a)(2)),

(3) The applicant for extension is submitted by the owner of record of the patent or its agent and includes details relating to the patent and regulatory review time spent in securing FDA approval (35 U.S.C. 156(a)(3)),

(4) The product has been subject to a regulatory review period within the meaning of 35 U.S.C. 156(g) before its commercial marketing or use (35 U.S.C. 156(a)(4)),

(5) The approval:

(A) Is the first permitted commerical marketing or use of the product, or

(B) In the case of products manufactured using recombinant DNA technology, it is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the first permitted commercial marketing or use of a product manufactured under the

process claimed in the patent (35 U.S.C. 156(a)(5)), and

(6) The application for extension of the term of the patent was submitted to PTO

within 60 days of FDA approval of the commercial marketing application (35 U.S.C.

156(d)(1)).

While it is the responsibility of the Commissioner of Patents and Trademarks to

decide whether an applicant has satisfied these six conditions, FDA possesses

expertise and records regarding the last four and has certain direct

responsibilities under 35 U.S.C. 156 for determining the length of the regulatory

review period.    Consequently, to facilitate eligiblity decisions and permit FDA

and PTO to carry out their responsibilities under 35 U.S.C. 156, the FDA and PTO

have entered into this agreement.    This agreement is consistent with the authority

contained in section 702(d) of the Federal Food, Drug, and Cosmetic Act.

Under this agreement, FDA, upon receipt of a written request from PTO, will convey

to PTO the following information regarding eligibility for extension: (1) Whether a

product has undergone a regulatory review period within the meaning of 35 U.S.C.

156(g) prior to commercialization, (2) whether the marketing permission was for the

first permitted commercial marketing or use of that product, or, in the case of

recombinant marketing or use of that product, or, in the case of recombinant DNA

technology, whether such commercial marketing or use was the first permitted under

the process claimed in the patent, and (3) whether the patent term extension

application, as well as any other relevant information.    Similarly, upon a request

by PTO and the receipt of a copy of the application for patent term extension, FDA

will determine the application for patent term extension, FDA will determine the

length of the regulatory review period for the approved product.

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

52 FR 17830-02
52 FR 17830-02, 1987 WL 134776 (F.R.)
**(Cite as: 52 FR 17830)**

The procedures covered by this agreement extend from the date of PTO's request for information on eligibility to the resolution of due diligence petitions and information hearings.   The regulatory review period determination is not final until due diligence petitions and informal hearings, if any, have been resolved. A certificate for extension of the term of a patent may not issue from PTO until the regulatory review period determination is final unless an interim extension appears warranted under 35 U.S.C. 156(e)(2).

III. *Substance of the Agreement:   Patent Term Extension Applications Under 35 U.S.C. 156*

A. Eligibility Determination Assistance:

1. Upon deciding that a patent term extension application is complete and meets basic formal requirements, the PTO will send a written request to FDA requesting that FDA:

a. verify whether the product:

(1) Was subject to a regulatory review period within the meaning of 35 U.S.C. 156(g) prior to its commercial marketing or use, and

(2) Represents either the first permitted commercial marketing or use of that product, or, in the case of recombinant DNA technology, the first permitted commercial marketing or use of the product manufactured under the process claimed in the patent.

b. Inform PTO whether the patent term restoration application was submitted within 60 days after the product was approved.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

52 FR 17830-02                                                      Page 6
52 FR 17830-02, 1987 WL 134776 (F.R.)
**(Cite as: 52 FR 17830)**

2. Additionally, PTO, in its written request, shall clearly state that it is not requesting determination of the product's regulatory review period at this time.

3. FDA will consult its records and experts and, through the Director of the Health Assessment Policy Staff, Office of Health Affairs, issue a written response to the Director of Patent Examining Group 120, PTO, on each of these questions.

4. FDA, consistent with the authority contained in section 702(d) of the Federal Food, Drug, and Cosmetic Act with respect to drugs, will provide PTO with any other information relevant to the product's eligibility.

5. FDA, upon written request, will also provide assistance to PTO in petitions before the Commissioner of Patents and Trademarks regarding eligibility determinations.

B. Regulatory Review Period Determinations:

1. Should the PTO decide that the product is eligible for patent term restoration, it will send FDA a copy of the application for patent term restoration and a written request to determine the length of the product's regulatory review period. The copy and request will be sent to FDA within 60 days of the application's receipt by PTO.

2. FDA will consult its records, determine the entire length of the regulatory review period, and, through the Associate Commissioner for Health Affairs, issue a written statement of that determination to the Commissioner of Patents and Trademarks. The determination will be made within 30 days after the receipt of the application and written request from PTO. Additionally, FDA will publish its determination in the Federal Register.

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

52 FR 17830-02                                                          Page 7
52 FR 17830-02, 1987 WL 134776 (F.R.)
**(Cite as: 52 FR 17830)**

C. Due Diligence Petitions and Hearing Requests:

1. Due diligence petitions must be filed at FDA within 180 days of the publication of a product's regulatory review period in the Federal Register.

a. If no due diligence petition is received by FDA within the 180-day filing period, FDA will promptly notify PTO in writing that the regulatory review period determination is final.

b. If a due diligence petition which satisfies statutory and regulatory requirements is received by FDA,

(1) FDA will promptly notify PTO in writing of the receipt of the petition,

(2) PTO will refrain from issuing a certificate of extension pending a final determination of the regulatory review period unless an interim extension appears warranted under 35 U.S.C. 156(e)(2),

(3) FDA will determine whether the applicant acted with due diligence within 90 days after receipt of such a petition and will send written notification to the Commissioner of Patents and Trademarks as to any modification in the length of the regulatory review period, and

(4) FDA will also publish its due diligence determination, together with the full factual and legal bases for FDA's decision, in the Federal Register.

2. Requests for an informal hearing on FDA's due diligence determination must be received by FDA within 60 days of the publication of the due diligence determination in the Federal Register.

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

52 FR 17830-02                                                    Page 8
52 FR 17830-02, 1987 WL 134776 (F.R.)
**(Cite as: 52 FR 17830)**

a. If FDA does not receive any request for an informal hearing within the 60 filing period, FDA will notify PTO in writing that the regulatory review period determination, as modified, if at all, by the due diligence determination, is final.

b. If FDA receives a request for an informal hearing within the 60 day filing period,

(1) FDA will notify PTO in writing of the hearing request,

(2) PTO will refrain from issuing a certificate of extension pending final determination of the regulatory review period unless an interim extension appears warranted under 35 U.S.C. 156(e)(2), and

(3) FDA will affirm or revise the determination that was the subject of the hearing within 30 days after completion of the hearing and will notify the Commissioner of Patents and Trademarks in writing of its decision and whether the determination of the regulatory review period is now final. *17832 Additionally, FDA will publish its findings in the Federal Register.

D. Supplemental Information:

Should either agency receive information which is relevant to the patent term restoration of a patent during any stage of these eligibility or regulatory review period determinations, that agency will promptly notify the other and provide documentation as available.

E. Availabilty of Information:

Copies of all letters required by this agreement and exchanged between PTO and FDA

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

52 FR 17830-02                                                          Page 9
52 FR 17830-02, 1987 WL 134776 (F.R.)
**(Cite as: 52 FR 17830)**

will be placed in the file for each product subject to patent term restoration.

These files are available for review at FDA's Dockets Management Branch (HFA-305),

Room 4-62 5600 Fishers Lane, Rockville, Maryland 20857 and at the Patent and

Trademark Office, Crystal Plaza Building 2-9A09, 2011 Jefferson Davis Highway,

Arlington, Virginia 22202.

*IV Names and Addresses of Participating Parties*

A. Patent and Trademark Office, Washington, DC 20231.

B. Food and Drug Administration, 5600 Fishers Lane, Rockville Maryland 20857.

*V. Liaison Officers*

A. Liaison Officer for the Patent and Trademark Office: Director, Patent Examining

Group 120, (currently Charles E. Van Horn, Esq.), Patent and Trademark Office,

Washington, DC 20231, (703-557-3637).

B. Liaison Officer for the Food and Drug Administration: Director, Health

Assessment Policy Staff (HFY-20), (currently Ronald L. Wilson), Office of Health

Affairs, Food and Drug Administration, 5600 Fishers Lane, Rockville, Maryland

20857, (301-443-1382).

*VI. Period of Agreement*

This agreement, when accepted by both parties, will be effective indefinitely.

It may be modified by mutual written consent or terminated by either party upon a

thirty day advance written notice to the other party.

APPROVED AND ACCEPTED FOR THE PATENT AND TRADEMARK OFFICE.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

52 FR 17830-02                                                    Page 10
52 FR 17830-02, 1987 WL 134776 (F.R.)
**(Cite as: 52 FR 17830)**

By:  Donald J. Quigg,

Title:  Assistant Secretary and Commissioner of Patents and Trademarks.

Dated:  September 17, 1986.

 APPROVED AND ACCEPTED FOR FOOD AND DRUG ADMINISTRATION.

By:  John M. Taylor,

Title:  Acting Associate Commissioner for Regulatory Affairs.

Dated:  September 3, 1986.

[FR Doc. 87-10713 Filed 5-11-87;  8:45 am]

BILLING CODE 4160-01-M

 52 FR 17830-02, 1987 WL 134776 (F.R.)

END OF DOCUMENT

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

# Declaration of Kathleen Kahler Fonda ("Fonda Decl.")

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SOMERSET PHARMACEUTICALS, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-279 (GMS) |
| | ) |
| JON W. DUDAS, in his official capacity | ) |
| as Under Secretary of Commerce for | ) |
| Intellectual Property and Director of the | ) |
| United States Patent and Trademark Office, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DECLARATION OF KATHLEEN KAHLER FONDA

I, Kathleen Kahler Fonda, make the following declaration based upon my personal knowledge of the facts set forth herein. I hereby testify and declare the following:

1.    I hold the position of Legal Advisor in the Office of Patent Legal Administration of the U.S. Patent and Trademark Office ("USPTO"). I have held this position since July 2005, and my duties include reviewing applications for patent term extension under 35 U.S.C. § 156. I was previously employed by the USPTO as a Patent Examiner from August 1993 until August 2003. In that capacity, I examined patent applications in the chemical and pharmaceutical areas.

2.    As part of my current responsibilities as a Legal Advisor, I reviewed the "Application for Patent Term Extension Under 35 U.S.C. § 156" ("Patent Term Extension Application") filed with the USPTO by Somerset Pharmaceuticals, Inc. ("Somerset") to extend the term of its Reissue Patent No. 34,579 ("the '579 patent").

1

Applicant asserts that the '579 patent provides patent protection for its drug product EMSAM®.

    3.      On December 22, 2006, I sent a letter in my official capacity to the Food and Drug Administration ("FDA"), with a copy to Margaret Sampson as counsel for Somerset, indicating that the USPTO did not believe that the '579 patent was eligible for patent term extension because the FDA's regulatory approval of EMSAM® did not represent permission for the first commercial marketing or use of the active ingredient selegiline as required under § 156(a)(5)(A). I reached this conclusion because it appeared that the FDA had previously approved the hydrochloride salt form of selegiline pursuant to 21 U.S.C. § 355. In the letter, I sought help from the FDA in verifying the commercial marketing or use information, consistent with the Memorandum of Understanding Between the USPTO and the FDA, which is at available at 52 Fed. Reg. 17830-17832 (May 12, 1987). In accordance with that agreement, the USPTO routinely seeks the FDA's assistance in determining whether a patent meets the eligibility requirements set forth in § 156(a). The reason the USPTO does so is because the FDA possesses expertise and records regarding certain requirements, one of which is whether the FDA's regulatory approval of the drug product represented permission for the first commercial marketing or use of the active ingredient. The USPTO does not have such records, and in this case the requirement concerning the first commercial marketing or use is in dispute.

    4.      On February 2, 2007, I participated in an interview with counsel for Somerset, specifically Margaret Sampson and Tracey Davies, about Somerset's Patent Term Extension Application. Kery A. Fries, Senior Legal Advisor in the Office of Patent Legal Administration, and Janet A. Gongola of the Office of the Solicitor of the USPTO,

were also present on behalf of the USPTO. During the course of that interview, the subject of an interim extension application under 35 U.S.C. § 156(e)(2) was discussed.

5.      On February 21, 2007, Plaintiff filed an "Application for Interim Patent Extension Under 35 U.S.C. § 156(e)(2)" ("Interim Extension Application") with the USPTO, and I have reviewed that application in accordance with my responsibilities.

6.      Following the February 2, 2007 interview, I received numerous telephone calls from Ms. Sampson and/or Ms. Davies regarding Somerset's Patent Term Extension Application and its Interim Extension Application. I repeatedly explained that the USPTO is in the process of deciding Somerset's two applications. I also explained that, in accordance with the USPTO's normal business practice, the USPTO was awaiting a response from the FDA as to the commercial marketing or use information.

7.      On May 21, 2007, I received the most recent telephone call from Ms. Davies and Ms. Sampson. I was asked about the status of the USPTO's decisions regarding the Patent Term Extension and Interim Extension Applications. Once again, I explained that the USPTO was actively working on these matters, and that I hoped to receive input from the FDA soon.

8.      I attest that the USPTO anticipates issuing a final decision addressing Somerset's Patent Term Extension and Interim Extension Applications promptly after the FDA responds to my inquiry of December 22, 2006. In fact, in advance of the FDA's response, I have begun preparing a draft decision. The USPTO anticipates issuing that decision before the '579 patent expires.

9.      Before Somerset's suit against the USPTO, personnel from the Office of Patent Legal Administration contacted the FDA on several occasions to request that the

3

FDA reply as expeditiously as possible to the USPTO's letter dated December 22, 2006. After Somerset filed suit, I personally contacted John Weiner of the Office of Chief Counsel of the FDA via e-mail on May 23, 2007, by telephone on or about May 24, 2007, and by telephone on June 4, 2007.    In both of the telephone conversations, Mr. Weiner indicated that the FDA would investigate the issues involved, and send a reply as soon as possible.

I declare under penalty of perjury pursuant to 18 U.S.C. § 1001 that the foregoing is true and correct.

Kathleen Kahler Fonda

June 8, 2007

Date

4

# EXHIBIT 3

# Declaration of Jane A. Axelrad ("Axelrad Decl.")

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SOMERSET PHARMACEUTICALS, INC. )<br>)<br>Plaintiff,           )<br>)<br>v.                )<br>)<br>JON W. DUDAS, in his official capacity )<br>as Under Secretary of Commerce for )<br>Intellectual Property and Director of the )<br>United States Patent and Trademark Office, )<br>)<br>Defendant.          )<br>_____ ) | Civil Action No. 07-279 (GMS) |

**DECLARATION OF JANE A. AXELRAD**

I, Jane A. Axelrad, make the following declaration based upon my personal knowledge of the facts set forth herein. I hereby testify and declare the following:

1.    I hold the position of Associate Director for Policy and Director, Office of Regulatory Policy (ORP) in the Food and Drug Administration's (FDA's) Center for Drug Evaluation and Research (CDER). I have served as the Associate Director for Policy, CDER, for over 15 years. My responsibilities include overseeing ORP's implementation of FDA's responsibilities relating to patent term restoration under the Drug Price Competition and Patent Term Restoration Act of 1987 (Pub. L. 98-417).

2.    Pursuant to my responsibilities, I have reviewed a letter from the U.S. Patent and Trademark Office ("USPTO") dated December 22, 2006, regarding the "Application for Patent Term Extension Under 35 U.S.C. § 156" ("Patent Term Extension Application") filed by Somerset Pharmaceuticals, Inc. ("Somerset") to extend

1

the term of its Reissue Patent No. 34,579 ("the '579 patent"), which Somerset asserts claims the drug product EMSAM®. In that letter, the USPTO indicated that it did not believe that the '579 patent was eligible for patent term extension because the FDA's regulatory approval of EMSAM® did not represent permission for the first commercial marketing or use of the active ingredient selegiline as required under § 156(a)(5)(A). The USPTO sought help from the FDA in verifying this commercial marketing information pursuant to the Memorandum of Understanding Between the USPTO and the FDA, 52 Fed. Reg. 17830-17832 (May 12, 1987).

3.      FDA's Office of Chief Counsel has informed me that on May 23, 2007, they were contacted by Kathleen Kahler Fonda of USPTO regarding the Patent Term Extension Application. Ms. Fonda inquired whether the FDA would be able to provide the help requested in the USPTO's letter of December 22, 2006. Ms. Fonda also informed FDA that Somerset has filed a Complaint against the USPTO and accompanied that Complaint with a Motion for Preliminary Injunction. The Office of Chief Counsel indicated that, in the press of agency work, and due to our limited resources, we had not yet completed our investigation, but that we would continue to investigate the issues involved, and send a reply as soon as possible.

4.      The Office of Chief Counsel has also informed me that on or about May 24, 2007, and on June 4, 2007, they spoke with Ms. Fonda regarding the FDA's input, confirming that the FDA was investigating the relevant issues.

5.      I attest that the FDA is actively investigating the commercial marketing status of EMSAM® as requested by the USPTO, anticipates completing that

2

investigation soon, and fully expects to respond to the USPTO to enable the USPTO to decide Somerset's patent term extension application before the '579 patent expires.

I declare under penalty of perjury pursuant to 18 U.S.C. § 1001 that the foregoing is true and correct.

_Jane A. Axelrad_

Jane A. Axelrad

_6/7/07_

Date

3

# EXHIBIT 4

# Declaration of Mary C. Till ("Till Decl.")

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SOMERSET PHARMACEUTICALS, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-279 (GMS) |
| | ) |
| JON W. DUDAS, in his official capacity | ) |
| as Under Secretary of Commerce for | ) |
| Intellectual Property and Director of the | ) |
| United States Patent and Trademark Office, | ) |
| | ) |
| Defendant. | ) |
| | ) |

### DECLARATION OF MARY C. TILL

I, Mary C. Till, make the following declaration based upon my personal knowledge of the facts set forth herein. I hereby testify and declare the following:

1.    I hold the position of Legal Advisor in the Office of Patent Legal Administration of the U.S. Patent and Trademark Office ("USPTO"). I have held this position since July 11, 2005, and my duties include reviewing applications for patent term extension under 35 U.S.C. § 156.

2.    As part of my current responsibilities as a Legal Advisor, I serve as the principle contact person for the Food and Drug Administration ("FDA") in connection with patent term extension applications filed under § 156. That is, the USPTO receives patent term extension applications from applicants and determines whether those applications satisfy the eligibility requirements set forth in § 156(a). In doing so, the USPTO routinely seeks certain information from the FDA pursuant to the "Memorandum of Understanding Between the USPTO and the FDA." The USPTO consults with the FDA because the FDA possesses expertise and records regarding some of the eligibility

1

requirements that the USPTO does not have. For applications where the USPTO requests help from the FDA, I telephone the FDA to inquire about the status of pending requests as needed.

3.    On March 19, 2007, I spoke with Elizabeth Dickinson of the Office of General Counsel of the FDA about several pending requests, including one sent by Kathleen Kahler Fonda on December 22, 2006, concerning a patent term extension application filed by Somerset Pharmaceuticals, Inc. to extend the term of its Reissue Patent No. 34,579, which allegedly provides patent protection for Somerset's drug product EMSAM®. Ms. Dickinson informed me that the FDA was investigating the issues involved, and would send a reply soon.

4.    On March 29, 2007, after my telephone conversation with Ms. Dickinson, I sent an email to Beverly Friedman of the Office of Regulatory Policy at the FDA (copying Ms. Dickinson) to follow-up on the status of the USPTO's request of December 22, 2006 regarding EMSAM®.

I declare under penalty of perjury pursuant to 18 U.S.C. § 1001 that the foregoing is true and correct.

Mary C. Till

6/8/07
Date

2

## Till, Mary

| | |
|---|---|
| **From:** | Till, Mary |
| **Sent:** | Monday, March 19, 2007 1:10 PM |
| **To:** | Gongola, Janet; Fonda, Kathleen |
| **Cc:** | Kelley, Nathan; Lingard, Justin; Till, Mary |
| **Subject:** | General Counsel's office at FDA |

I spoke to Liz Dickinson at FDA today and have made her aware of the EMSAM case as well as a couple of others that are hanging around with them. She has informed that she'll call back tomorrow. I've met her before at FDLI events and so I will follow up with her if I do not hear from her tomorrow. Just wanted to let you know.

*Sincerely,*

*Mary*

Mary C. Till
Legal Advisor
Office of Patent Legal Administration
United States Patent and Trademark Office

600 Dulany St.
Alexandria, VA 22313

(571) 272-7755

This e-mail message is intended only for individual(s) to whom it is addressed. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

# Till, Mary

| | |
|---|---|
| **From:** | Till, Mary |
| **Sent:** | Thursday, March 29, 2007 2:50 PM |
| **To:** | 'Friedman, Beverly J' |
| **Cc:** | Targoff, Carol; Dickinson, Elizabeth |

**Subject:** RE: Vusion Patent # 4,911,932 - Eligibility Letter

Thanks for the efforts in pushing this one through. Now, I hate to be a bother, but. . . thoughts on the other one re: the selegiline transdermal?

-----Original Message-----
**From:** Friedman, Beverly J [mailto:beverly.friedman@fda.hhs.gov]
**Sent:** Thursday, March 29, 2007 2:45 PM
**To:** Till, Mary
**Cc:** Jaffe, Lyle D; Ortega, Gloria M; Butler, Jennie C; Targoff, Carol; Dickinson, Elizabeth
**Subject:** Vusion Patent # 4,911,932 - Eligibility Letter

Here's the Vusion Eligibility letter sent out 3/29/2007.

<<Eligibility Letter.pdf>>

Enjoy!

Beverly Friedman
Center for Drug Evaluation and Research
Food and Drug Administration

P.S. Mary, a hard copy will follow.

# EXHIBIT 5

# Electronic Orange Book Listing for EMSAM®

**Patent and Exclusivity Search Results from query on Appl No 021336 Product 001 in the OB_Rx list.**

## Patent Data

| Appl No | Prod No | Patent No | Patent Expiration | Drug Substance Claim | Drug Product Claim | Patent Use Code |
|---------|---------|-----------|-------------------|----------------------|--------------------|-----------------|
| 021336 | 001 | 7070808 | MAY 10,2018 | Y | Y | |
| 021336 | 001 | 7150881 | JUN 12,2018 | Y | Y | |
| 021336 | 001 | RE34579 | AUG 18,2007 | Y | Y | U-711 |

## Exclusivity Data

| Appl No | Prod No | Exclusivity Code | Exclusivity Expiration |
|---------|---------|------------------|------------------------|
| 021336 | 001 | NDF | FEB 27,2009 |

Additional information:

1. Patents are published upon receipt by the Orange Book Staff and may not reflect the official receipt date as described in 21 CFR 314.53(d)(5).
2. Patents submitted on FDA Form 3542 and listed after August 18, 2003 will have one to three patent codes indicating specific patent claims as submitted by the sponsor and are detailed in the above table.
3. Patents listed prior to August 18, 2003 are flagged with method of use claims only as applicable and submitted by the sponsor. These patents may not be flagged with respect to other claims which may apply
4. *PED and PED represent pediatric exclusivity. Patents with pediatric exclusivity granted after August 18, 2003 will be indicated with *PED as was done prior to August 18, 2003. Patents with *PED added after August 18, 2003 will not contain any information relative to the patent itself other than the *PED extension. Information related specifically to the patent will be conveyed on the original patent only.
5. U.S. Patent Nos. RE 36481 and RE 36520 were relisted for Zocor (NDA 19-766) pursuant to the decision and related order in Ranbaxy Labs. v.Leavitt, No. 05-1838 (D.D.C. April 30, 2006). The '481 and '520 patents remained listed in Approved Drug Products with Therapeutic Equivalence Evaluations until any applicable periods of exclusivity pursuant to section 505(j)(5)(B)(iv) of the Federal Food, Drug, and Cosmetic Act were triggered and run. For additional information on this matter, please refer to Docket Nos. 2005P-0008 and 2005P-0046. Patents were subsequently delisted in the December 2006 Orange Book update as the exclusivity periods have triggered and run to expiration.

View a list of all patent use codes
View a list of all exclusivity codes

Return to Electronic Orange Book Home Page

FDA/Center for Drug Evaluation and Research
Office of Generic Drugs
Division of Labeling and Program Support

Update Frequency:

Orange Book Data - **Monthly**

Generic Drug Product Information & Patent Information - **Daily**

Orange Book Data Updated Through May, 2007

Patent and Generic Drug Product Data Last Updated: June 07, 2007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SOMERSET PHARMACEUTICALS, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-279 (GMS) |
| | ) |
| JON W. DUDAS, in his official capacity | ) |
| as Under Secretary of Commerce for | ) |
| Intellectual Property and Director of the | ) |
| United States Patent and Trademark Office, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## [PROPOSED] ORDER

Upon consideration of the Plaintiff's Motion for a Preliminary Injunction, (D.I. 2), it is

hereby ORDERED that the Motion is DENIED.


Dated:_____

                                   _____

                                   UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SOMERSET PHARMACEUTICALS, INC.,          :
                                         :
          Plaintiff,                     :    Civil Action No. 07-279 (GMS)
                                         :
JOHN W. DUDAS, in his official capacity   :
as Under Secretary of Commerce for       :
Intellectual Property and Director of the :
United States Patent and Trademark Office, :
                                         :
          Defendant.                     :

### AFFIDAVIT OF SERVICE

I, Kathie Gray, an employee in the Office of the United States Attorney for the District of Delaware, hereby attest under penalty of perjury, that on June 11, 2007, I electronically filed the foregoing **DIRECTOR'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** with the Clerk of Court using ECF which will send notification of such filing(s) to the following:

David E. Wilks, Esquire
Reed Smith LLP
1201 Market Street
Suite 1500
Wilmington, DE 19801
(302) 778-7560
dwilks@reedsmith.com

I hereby attest that on June 11, 2007, I have mailed by United States Postal Service, the document(s) to the following non-registered participants:

Tracey B. Davies, Esquire          John M. Faust, Esquire
Chad P. Ennis, Esquire             Christopher L. Keough, Esquire
Margaret J. Sampson, Esquire       Vinson & Elkins, LLP
Vinson & Elkins, LLP               The Willard Office Building
2801 Via Fortuna, Suite 100        1455 Pennsylvania Ave., N.W.
Austin, TX 78746                   Suite 600
                                   Washington, DC 20004-1008

                    */s/ Kathie Gray*

                    _____
                    Kathie Gray, Legal Assistant