IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SOMERSET PHARMACEUTICALS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JON W. DUDAS, in his official capacity ) <br>     as Under Secretary of Commerce for ) <br>     Intellectual Property and Director of the ) <br>     United States Patent and Trademark Office, ) <br> ) <br> Defendant. ) <br> ) | C.A. NO.: 07-279 (GMS) |

**REPLY BRIEF IN SUPPORT OF
<u>PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>**

David E. Wilks
Del. Bar I.D. 2793
**REED SMITH LLP**
1201 Market Street, Suite 1500
Wilmington, Delaware 19801
Tel. 302.778.7560
Fax 302.778.7575

John M. Faust
**VINSON & ELKINS L.L.P.**
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C. 20004-1008
Tel. 202.639.6500
Fax 202.639.6604

Counsel for Plaintiff
Somerset Pharmaceuticals, Inc.

Dated: June 18, 2007

# **TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ........................................................................................1

II. ARGUMENT ......................................................................................................................2

    A.    Somerset's Motion Properly Seeks Injunctive Relief. ................................................2

    B.    The PTO Has Offered No Credible Opposition to Somerset's Motion for Preliminary Injunction. ..........................................................................................4

        1.    Somerset's Case on the Merits Is Uncontested. ............................................4

        2.    Somerset Has Shown that it Faces a Potentially Irreparable Harm that Can Be Averted without Harming Anyone. .......................................................7

        3.    The PTO's Arguments Are Baseless and Beside the Point. ..........................8

III. CONCLUSION ................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Cutler v. Hayes,*
818 F.2d 879 (D.C. Cir. 1987) ................................................................................... 4

*Elec. Workers Pension Trust Fund of Local Union #58 v. Gary's Elec. Serv. Co.,*
340 F.3d 373 (6th Cir. 2003) ..................................................................................... 3

*Golden State Bottling Co. v. NLRB,*
414 U.S. 168 (1973) .................................................................................................. 2

*In re Reckitt & Coleman Prods. Ltd.,*
230 U.S.P.Q. (BNA) 371 (Comm'r Pat. & Trademarks 1986) ................................. 6

*Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n,*
389 U.S. 64 (1967) .................................................................................................... 3

*Stern v. South Chester Tube Co.,*
390 U.S. 606 (1968) .................................................................................................. 3

*Virgin Islands v. Douglas,*
812 F.2d 822 (3d Cir. 1987) ..................................................................................... 2

**Statutes**

21 U.S.C. § 355 ............................................................................................................. 10

35 U.S.C. § 156(e)(2) ...................................................................................................... 6

5 U.S.C. § 706(1) ........................................................................................................ 2, 6

Fed. R. Civ. P. 65 ..................................................................................................... 2, 3, 7

Fed. R. Civ. P. 65(a)(2) .................................................................................................... 2

Fed. R. Civ. P. 65(d) ................................................................................................... 2, 3

**Other Authorities**

11A Charles Alan Wright et al.,
*Federal Practice and Procedure* § 2941 (2d ed. 1995) ............................................. 3

# I.
# PRELIMINARY STATEMENT

In its Response to Somerset's Motion for Preliminary Injunction, the PTO takes no issue with Somerset's showing that it would be entitled to administrative and/or judicial review of any decision denying its long-pending application for patent term extension of Reissue Patent No. 34,579 ("the '579 Patent"). Instead, the agency promises to decide that application at some unspecified time before Somerset's patent expires two months from now, in August 2007. But it also acknowledges that if the '579 Patent is permitted to expire, Somerset may not be able to revive it—even if judicial review later confirms that the PTO unlawfully refused to extend the patent in the first place. Somerset has shown that, in these circumstances, the governing statute and PTO precedent require the agency to grant an *interim* extension, and in its answering brief, the agency *does not deny it*. Indeed, the PTO directs no argument to the merits whatsoever. Nor does it contest the fact that preserving the status quo here—by keeping the '579 Patent in place long enough to permit orderly review of the PTO's anticipated denial of the requested patent term extension—would harm no one because Somerset has marketing exclusivity throughout the term of the interim extension it seeks.

In sum, the PTO has no grounds for refusing to grant an interim extension. It defends its continuing failure to act here only with distractions and empty promises, claiming that Somerset really should have styled its motion as seeking mandamus rather than preliminary injunctive relief, that the PTO will do the best it can to decide the fate of the '579 Patent before it expires, that Somerset should take comfort that it has other patents that are not set to expire so soon, and that that the PTO's delay is inconsequential because it thinks this Court could not have provided timely judicial review even if the PTO had acted promptly itself. None of those positions has

merit, and none of them excuses the agency's failure to follow the command of the statute and its own precedents by granting an interim extension.

## II.
## ARGUMENT

### A. Somerset's Motion Properly Seeks Injunctive Relief.

This is an action under the Administrative Procedure Act, 5 U.S.C. § 706(1), to "compel agency action unlawfully withheld or unreasonably delayed." As Somerset has already acknowledged, the cause of action is akin to mandamus in that we seek an order compelling a government agency to discharge a *non-discretionary* legal obligation. *See Virgin Islands v. Douglas*, 812 F.2d 822, 832 (3d Cir. 1987). The PTO identifies the same standard in the mandamus cases it cites. *See* Def.'s Resp. 9. So, there is no real difference between the parties over the substantive law to apply here, whether or not one chooses to refer to it colloquially as "mandamus."[1]

In addition, the PTO's procedural complaint that a party cannot seek "mandamus" relief in a preliminary injunction motion is simply unfounded.[2] The Supreme Court has made clear that courts may issue preliminary injunctions under Rule 65 not only to prohibit a party from performing an act, but also to require that a party affirmatively perform an act. In *Golden State Bottling Co. v. National Labor Relations Board*, for instance, the Court observed that it has "previously found Rule 65(d) applicable to mandatory injunctions and [has] noted that courts of appeals have applied it 'not only to prohibitory injunctions but to enforcement orders and

---

[1] The mandamus cases do emphasize the requirement that the plaintiff show that it has no other adequate remedy available to it, but Somerset already addresses that issue as part of its showing of irreparable harm under Rule 65.

[2] The PTO does not object to Somerset's request under Rule 65(a)(2) that proceedings on the merits of this dispute be advanced and consolidated with proceedings on Somerset's preliminary injunction motion, as this case presents only legal questions and no material facts are in dispute.

2

affirmative decrees as well.'" 414 U.S. 168, 178 n.4 (1973) (quoting *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 75 (1967)); *accord* 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2941 (2d ed. 1995) (noting that preliminary injunctions "require a party either to do or to refrain from doing some act"). *See also Elec. Workers Pension Trust Fund of Local Union #58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 381–82 (6th Cir. 2003) ("[T]he Supreme Court [has] liberally applied Rule 65(d) to any 'equitable decree compelling obedience under the threat of contempt.'") (citation omitted). Equitable decrees that require a party to perform an affirmative act are typically referred to as "mandatory injunctions," and like prohibitive injunctions, are governed by Rule 65. *See Int'l Longshoremen's Ass'n*, 389 U.S. at 75 ("We have previously employed the term 'mandatory injunction' to describe an order compelling parties to abide by an agreement to arbitrate, and there is no reason to suppose that Rule 65(d) employed the injunction concept more narrowly.") (citations omitted).

For these reasons, the distinction the PTO tries to draw between mandatory and prohibitive injunctive relief is not a significant one.[3] The distinction is especially tenuous in this case, moreover, because the "mandatory" relief that Somerset seeks is fundamentally "prohibitive" in nature—*i.e.*, a classic request to preserve the status quo of Somerset's existing patent protection before it is altered, potentially forever, by the '579 Patent's looming expiration date.

---

[3] The formalistic distinction that the PTO attempts to draw between mandamus and injunctive relief is a vestige of the days before the merger of law and equity. *See Stern v. South Chester Tube Co.*, 390 U.S. 606, 609 (1968) (noting that "[t]he distinction . . . between mandamus and a mandatory injunction seems formalistic in the present day and age" and that cases recognizing the distinction predate "the merger of law and equity"). Modern courts have affirmatively rejected this antiquated distinction and recognized that the two forms of relief are "interchangeable." *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1236 (10th Cir. 2005).

### B. The PTO Has Offered No Credible Opposition to Somerset's Motion for Preliminary Injunction.

#### 1. *Somerset's Case on the Merits Is Uncontested.*

Somerset seeks an order compelling the PTO to *decide* on Somerset's requested interim extension now and, in that decision, to *grant* the interim extension. The PTO offers no significant challenge to Somerset's arguments on the merits of its entitlement to that relief.

First, as to its threshold obligation to decide promptly, the PTO evidently agrees that it bears the burden of justifying its delay. It attempts to shoulder that burden by arguing that the statute and implementing regulations establish no firm deadline by which the agency must act and by insisting that it will act on the extension request just as soon as it hears from the FDA. Neither argument has merit. True, there is no deadline for action expressly articulated in the governing rules, but our point was different. Somerset argued that the 90-day pre-expiration deadline for seeking an interim extension is an articulation of the agency's view about the amount of time it needs to act on such a request (90 days), and that the legislative history of the Hatch Waxman Act puts a premium on prompt PTO action because of the concern it expresses of avoiding patent expiration during the patent term extension process. Pl.'s Br. 11.

The PTO does not argue otherwise, except in its untenable suggestion (unsupported by citation) that the lack of any clear statutory deadline gives it *carte blanche* to take action if and when it pleases. Def.'s Resp. 11–12. *See Cutler v. Hayes*, 818 F.2d 879, 896 & n.151 (D.C. Cir. 1987) (noting that "since the consequences of dilatoriness may be great," the "agency's discretion is not unbounded," and "[t]here must be a 'rule of reason' to govern the time limit to administrative proceedings"). We now stand at four months since Somerset sought an interim extension, and the PTO is giving this Court the same answer it has been giving Somerset all

4

along: "Trust us. We don't know when we'll decide, but we're working on it." That unsatisfactory answer does not begin to carry the PTO's burden under the APA.

Moreover, the PTO cannot credibly blame its sister agency, the FDA, for its failure to act within a reasonable timeframe. The FDA's input on the underlying Patent Term Extension Application has absolutely no bearing on whether the PTO should grant Somerset's application for *interim* relief. The PTO does not and cannot claim otherwise.[4] The inter-agency Memorandum of Understanding ("MOU") that the PTO cites as the basis for its policy of soliciting the FDA's input on an *underlying patent term extension application* nowhere indicates that the PTO is supposed to solicit the FDA's input on applications for interim relief. *See generally,* Memorandum of Understanding Between the USPTO and the FDA, 52 Fed. Reg. 17830 (May 12, 1987).

The PTO has not presented any sound reason for holding its decision on the interim extension until after it hears from the FDA or issues its final ruling on the underlying application for patent term extension. As Somerset has explained, Pl.'s Br. 11–19, both the statute and the PTO's own precedents establish that the principal purpose of an interim extension is to ensure that a patent does not expire pending consideration or administrative or judicial review of the underlying application for patent term extension. Decisions on patent term extensions and interim extension are substantively distinct, even if they can occur at the same time. Indeed, it is the PTO's practice to grant interim extensions even when it chooses to deny the underlying application for patent term extension so that the patentee has adequate time to seek judicial or administrative review before the patent at issue expires. *See In re Reckitt & Coleman Prods.*

---

[4] The PTO's documented efforts to solicit FDA input (most of which post-date the filing of this lawsuit, *see* Def.'s Resp. Exs. 2 & 3) do not reflect any discussion about the propriety of interim relief.

5

*Ltd.*, 230 U.S.P.Q. (BNA) 369, 371–72 (Comm'r Pat. & Trademarks 1986); *In re Arkion Life Sciences*, Order Granting Interim Extension, attached as Ex. 7 to Pl.'s Br. Thus, whatever the propriety of the FDA's input on the underlying patent term extension application (a question the parties dispute), that separate issue has no bearing on the interim relief requested in this motion, and the PTO's ongoing failure to address the requested interim relief cannot be excused by blaming the delay on the FDA.

Furthermore, the PTO offers no answer at all to Somerset's position that the statute and PTO precedent require the grant of an interim extension. Somerset's opening brief showed that, under 35 U.S.C. § 156(e)(2) and its legislative history, the PTO "shall extend" patents on an interim basis whenever it is possible the patent term would expire before a certificate extending the patent can be "issued or denied." Pl.'s Br. 15. Somerset showed further that the PTO has consistently applied the statute so as to require the grant of interim relief when the question of entitlement to extension cannot be fully resolved—*i.e.*, administratively and/or judicially reviewed—before the patent expires. *Id.* at 17–19. The PTO has followed this practice even after it has denied an underlying application for patent term extension, properly recognizing that its denial is subject to further review and heeding the statutory command that it use the available interim relief measures to guard against premature patent expiration pending further review. *Id.* Under the circumstances presented here, Somerset showed that the PTO's duty to grant an interim extension is clear, non-discretionary, mandatory, and therefore enforceable now with injunctive relief in the nature of mandamus under Section 706(1) of the APA.[5]

---

[5]   Because Somerset is seeking to enforce a non-discretionary obligation, the PTO misses the point when it cites to cases holding that mandamus may not be used to direct the manner in which an agency may exercise its discretion. *See* Def.'s Resp. 12.

6

The PTO offers no contrary view of the statute or of Somerset's plain reading of PTO precedent. In fact, the agency does not even *cite* that precedent, let alone discuss or attempt to distinguish either it or the statutory language providing for interim extensions. When it provides its reasons for resisting an injunction, the PTO pointedly ignores the merits to focus on other arguments. *See* Def.'s Resp. 9 & 13 (arguing only that Somerset does not meet the "third requirement" for mandamus, *i.e.*, "no other adequate remedy," and the "second factor" under Rule 65, *i.e.*, irreparable harm). Lacking any answer on the merits, the PTO has conceded them to Somerset.

### 2. *Somerset Has Shown that it Faces a Potentially Irreparable Harm that Can Be Averted Without Harming Anyone.*

The PTO concedes, by electing not to address the matter in its brief, that Somerset faces the potentially irreparable harm of the '579 Patent expiring prior to any administrative or judicial review of the PTO's purportedly forthcoming decision on Somerset's application for patent term extension. *See* Pl.'s Br. 19. This concession of irreparable harm is especially apt because, even without a separate showing of irreparable harm, the statute requires the grant of an interim extension whenever premature patent expiration is possible, a point on the merits that the PTO has failed to refute. *See id.* at 19 n.11. The PTO similarly concedes that no harm will befall anyone if interim relief is granted to prevent premature expiration of the '579 Patent because Somerset still has marketing exclusivity under another statute—meaning that, during the period of the requested interim extension, competing generic products cannot enter the market, regardless of whether the '579 Patent is alive or expired. The interim relief Somerset that requests is to avert an imminent and potentially irreparable threat to its patent rights that, if extended, would protect Somerset for years beyond the period of marketing exclusivity. *See*

7

Pl.'s Br. 5–6. In simple terms, this case is about a concededly irreparable harm preventable with concededly harmless measures.

### 3. *The PTO's Arguments Are Baseless and Beside the Point.*

The PTO's first of three principal responses is that Somerset will not really be harmed, and has an "adequate remedy" other than an injunction, because a decision either granting or denying the applications for patent term and interim extension will be forthcoming at some unspecified date. *See* Def.'s Resp. 9–10, 13–14. That is no remedy. Somerset is seeking an actual decision, not another iteration of the agency's vague promise to decide *someday*. That promise is as unhelpful as it is uncertain. On the one hand, the PTO concedes that Somerset is entitled to judicial review of its decisions, but argues on the other hand that its only obligation is to decide on the patent term extension before the term of the '579 Patent expires—maybe even as late as the last day before expiration. As a practical matter, this will deny Somerset the ability to exercise its right to further administrative and/or judicial review. The harm Somerset seeks to avert is not the prospect that the PTO will fail to issue some sort of decision at some point before the last moment of patent life; it is that now, four months after Somerset applied for the interim extension, is already too late for Somerset to seek review of an adverse decision by the agency before the '579 Patent expires without an interim extension. The PTO's promises of diligence do not mitigate that harm. Again, the PTO does not dispute that it is obligated, by statute and its own precedents, to grant an interim extension so that the '579 Patent does not expire before Somerset is able to seek judicial review.

Having conceded irreparable harm as to the '579 Patent, the PTO abruptly diverts attention to the other two patents Somerset has listed in the FDA "Orange Book" as covering EMSAM®, positing that Somerset is sufficiently protected by these patents so that the PTO's failure to act appropriately with respect to the '579 Patent can be excused. This argument

8

reflects a fundamental misunderstanding of the scope of patent protection in the context of pharmaceutical products. The '579 Patent is considerably more valuable to Somerset than the other two patents because it broadly covers topical compositions for the transdermal administration of Selegiline as the "sole therapeutically active agent." In contrast, the other listed patents are narrower in scope than the '579 Patent because they are directed to very specific transdermal formulations. In the world of innovator and generic competition, the broad patent is significantly more valuable to Somerset because while a competitor may be able to design a generic transdermal Selegiline product that does not infringe the two transdermal formulation patents, it will not be able to design a generic transdermal Selegiline product that does not infringe the '579 Patent.

When a generic competitor files an Abbreviated New Drug Application ("ANDA") for a transdermal product, it does not need to demonstrate that the formulation of the generic product is identical to the formulation of the brand-name product. Instead, it only needs to demonstrate that the generic drug is bioequivalent to the brand-name product (*i.e.*, performs in the same manner as the innovator drug product). Thus, the FDA can approve a generic transdermal Selegiline product with an entirely different formulation than EMSAM®, as long as the generic product achieves a bioequivalent delivery of Selegiline when compared to EMSAM®. Such a product may not infringe Somerset's two other patents if its formulation does not fall within the scope of the claims to the specific transdermal formulations. But any such generic product necessarily *will* fall within the scope of the '579 Patent because it must be a topical composition for the transdermal administration of Selegiline as the "sole therapeutically active agent." Thus, while the '579 Patent broadly prohibits any competitor from marketing a transdermal Selegiline product, in its absence a generic competitor may design and bring to market an alternative but

9

bioequivalent product that does not infringe the other two patents Somerset has listed in the Orange Book. For these reasons, the PTO's suggestion that Somerset will not be irreparably harmed by the loss of the '579 Patent because the other two listed patents will provide adequate protection for EMSAM® is simply incorrect.

Finally, trying to shift the blame to the federal courts, the PTO argues that its delay is of no consequence because, even if it had denied Somerset's patent term extension application on February 27, 2006 (*i.e.*, the day that the FDA approved EMSAM® under 21 U.S.C. § 355), there still would not have been adequate time for Somerset to obtain judicial review of that denial before the term of the '579 Patent expired *19 months later* on August 18, 2007. Nonsense. The *median* time to resolve all cases in this district is only 16.8 months, and one can expect that for a case like this—with no factual complexity and capable of resolution at an early stage on motions—the average is far, far shorter. *See* Federal Court Management Statistics 2006 (Table C-5), *available at* http://www.uscourts.gov/judbus2006/appendices/c5.pdf. The PTO's cynicism about the pace of adjudication in federal court is not only misplaced, but disingenuous as well. The PTO means to give Somerset not 19 months, not six, not even three months to review its promised decision. It is instead making plain its view that it can issue a decision even in the very last moments of patent life, forcing Somerset (if any patent life remains at all) to rush into court on an emergency basis rather than in an orderly manner.

### III.
### CONCLUSION

For the foregoing reasons, the Court should grant Somerset's Motion for Preliminary Injunction, and enter an order immediately compelling the Director to grant an interim extension of the term of the '579 Patent for a period of one year from the expiration date of the patent, or

until a final, non-appealable judicial decision of the eligibility of the '579 Patent for term extension is obtained, whichever is earlier.

Respectfully submitted,

/s/ David E. Wilks
David E. Wilks
Del. Bar I.D. 2793
**REED SMITH LLP**
1201 Market Street, Suite 1500
Wilmington, Delaware 19801
Tel. 302.778.7560
Fax 302.778.7575

John M. Faust
**VINSON & ELKINS L.L.P.**
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C. 20004-1008
Tel. 202.639.6500
Fax 202.639.6604

Counsel for Plaintiff
Somerset Pharmaceuticals, Inc.

Dated: June 18, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 18, 2007, a copy of the foregoing Reply Brief in Support of Plaintiff's Motion for Preliminary Injunction was served on the following counsel of record in the manner indicated:

**By CM/ECF and Hand Delivery:**

Patricia C. Hannigan, Esquire
Assistant United States Attorney
1007 Orange Street, Suite 700
Wilmington, DE 19899-2046

**By First Class Mail:**

Janet Gongola, Esquire
Office of the Solicitor
U.S. Patent and Trademark Office
Madison Building East, Room 10B20
600 Dulany Street
Alexandria, VA 22314

/s/ David E. Wilks
David E. Wilks
Del. Bar I.D. 2793