**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SOMERSET PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 07-279 (GMS) |
| | ) | |
| v. | ) | |
| | ) | |
| JON W. DUDAS, in his official capacity | ) | |
| as Under Secretary of Commerce for | ) | |
| Intellectual Property and Director of the | ) | |
| United States Patent and Trademark Office, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT

Plaintiff Somerset Pharaceuticals, Inc. hereby respectfully moves the Court pursuant to Federal Rule of Civil Procedure 15(a) for leave to amend its complaint. In support of that motion, Plaintiff submits the following:

1.      Plaintiff commenced this action on May 22, 2007 seeking an order compelling the Director of the United States Patent and Trademark Office (the "PTO") to rule upon and, in fact, grant Plaintiff's Application for Extension of the Patent Term of United States Reissue Patent No. 34,579. Contemporaneously with the complaint, Plaintiff filed a motion for preliminary injunction which the PTO resisted on the basis that its ruling on Plaintiff's application was forthcoming. This Court denied Plaintiff's motion for preliminary injunction on June 29, 2007.

2.      On July 12, 2007, the PTO issued its decision on Plaintiff's application denying Plaintiff's requests for a five-year patent term extension and for a one-year interim extension. The issuance of the PTO's decision alters the procedural setting of the Plaintiff's claims and compels Plaintiff to amend its complaint to clarify the issues which Plaintiff requests this Court

to review.  Defendant has declined to consent to such an amendment without the Court's
intervention.

3.       Accordingly, Plaintiff respectfully requests leave to amend its complaint to add
information regarding the PTO's decision and to modify its claims in order that they more
accurately reflect present circumstances.  A copy of Plaintiff's amended complaint is attached as
Exhibit A.  A copy of Plaintiff's amended complaint which indicates the manner in which it
differs from the original complaint is attached as Exhibit B.

WHEREFORE, Plaintiff Somerset Pharmaceuticals, Inc. respectfully requests that the
Court grant it leave to amend its complaint.

REED SMITH LLP

By:  /s/  David E. Wilks
David E. Wilks (Del. Bar # 2793)
1201 Market Street, Suite 1500
Wilmington, Delaware 19801
Tel.  302.778.7560

and

John M. Faust
VINSON & ELKINS L.L.P.
1455 Pennsylvania Avenue, N.W., Suite 600
Washington, D.C.  20004-1008
Tel. 202.639.6500

*Attorneys for Plaintiff*

DATED:  July 19, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SOMERSET PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.:  07-279 (GMS) |
| | ) | |
| v. | ) | |
| | ) | |
| JON W. DUDAS, in his official capacity | ) | |
| as Under Secretary of Commerce for | ) | |
| Intellectual Property and Director of the | ) | |
| United States Patent and Trademark Office, | ) | |
| | ) | |
| Defendant. | ) | |

**[PROPOSED] ORDER**

This _____ day of _____, 2007, upon consideration of the motion of Plaintiff

Somerset Pharmaceuticals, Inc. for leave to amend its complaint and for good cause shown, it is

hereby ORDERED that the Motion shall be, and it hereby is, GRANTED.

Accordingly, it is hereby ORDERED that Plaintiff is granted leave to amend its

complaint in the manner set forth in the Motion.

_____
Chief Judge Gregory M. Sleet

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SOMERSET PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.:  07-279 (GMS) |
| | ) | |
| v. | ) | |
| | ) | |
| JON W. DUDAS, in his official capacity | ) | |
| as Under Secretary of Commerce for | ) | |
| Intellectual Property and Director of the | ) | |
| United States Patent and Trademark Office, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## AMENDED COMPLAINT

### Introduction

Plaintiff brings this action under the Administrative Procedure Act to set aside, as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," the July 12, 2007 decision of the United States Patent and Trademark Office ("PTO") denying extension of Plaintiff's drug product patent, U.S. Reissue Patent No. 34,579 ("the '579 Patent"), under the Hatch-Waxman Act, 35 U.S.C. § 156.  *See* 5 U.S.C. § 706(2)(A).[1]  Because Plaintiff's patent will expire on August 18, 2007 unless the Court intervenes, this Amended Complaint is accompanied by a Motion for Temporary Restraining Order and Preliminary Injunction requiring the PTO to undertake any and all measures necessary, as soon as possible and in all events prior to August 17, 2007, to extend the term of the '579 Patent until a final, non-appealable judgment

---

[1]    A true and correct copy of the '579 Patent was attached as Exhibit A to the original Complaint and is incorporated by reference here.

on Plaintiff's claim for judicial review of the PTO's July 12 Denial of Application for Extension of Patent Term and Denial of Application for Interim Extension.

For its Amended Complaint in this matter, Plaintiff alleges as follows:

## Parties

1.     Plaintiff Somerset Pharmaceuticals, Inc. ("Somerset") is a pharmaceutical company organized as a corporation under Delaware law.  Somerset's principal place of business is located in Tampa, Florida 33607.

2.     Defendant Jon W. Dudas (the "Director") is Under Secretary of the United States Department of Commerce and Director of the PTO.  The PTO is located at Madison Building East, Room 10B20, 600 Dulany St., Alexandria, Virginia 22314.  The Director is sued in his official capacity.

## Jurisdiction and Venue

3.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1338, and 1361.

4.     Venue is proper in this district under 28 U.S.C. § 1391(e)(3) as the Plaintiff resides in the District of Delaware for purposes of venue under this statute.

## Factual Allegations

### The Product

5.     Plaintiff's product, EMSAM® (Selegiline transdermal system), is a patch that is applied to the skin, which is designed to continuously administer the active ingredient of the product.  The sole active ingredient in EMSAM® is Selegiline.  EMSAM® is applied by a patient once a day, and is prescribed as a treatment for major depressive disorder.  The continuous administration of Selegiline with the patch offers several significant therapeutic advantages to patients, including reducing the risk of potentially fatal hypertensive crises.

6.     Plaintiff is the owner and assignee of the entire interest in the '579 Patent.  The product EMSAM®, as well as a method of using EMSAM®, fall within the scope of certain claims of the '579 Patent.

7.     Currently, the term of the '579 Patent is set to expire on August 18, 2007.

### *Somerset's Application for Patent Term Extension*

8.     35 U.S.C. § 156 provides that the term of a patent which claims a product or a method of using a product that is the subject of a New Drug Application ("NDA") shall be extended from the original expiration date of the patent to reimburse the NDA Applicant for patent life lost while going through the time-consuming regulatory approval process administered by the Food and Drug Administration ("FDA").

9.     Plaintiff spent over 11 years of the patent life of the '579 Patent pursuing regulatory approval of EMSAM® by the FDA, leaving the '579 Patent with less than a year and a half of patent life upon approval of the NDA by the FDA on February 27, 2006.

10.    In addition to covering a product subject to pre-marketing regulatory review, the patent and the product must meet the other statutory requirements set forth in 35 U.S.C. § 156 in order to be eligible for extension of patent term.  In particular, the statute requires that the product be the first permitted commercial marketing or use of the single active ingredient present in the drug product, in this case Selegiline base.  To Plaintiff's knowledge, and as confirmed by a communication dated July 12, 2007 from the FDA to the PTO regarding the EMSAM® product, no product containing Selegiline base as an active ingredient has ever received FDA pre-marketing approval.

11.     On April 27, 2006, Plaintiff timely filed an Application for Extension of Patent Term under 35 U.S.C. § 156 ("PTE Application") for the '579 Patent, based on FDA approval of EMSAM® on February 27, 2006.

12.     Based on the 11 years Plaintiff spent obtaining regulatory approval of EMSAM®, Plaintiff requested extension of the term of the '579 Patent for 5 years, until August 18, 2012, which is the maximum extension of patent term allowable under 35 U.S.C. § 156.

13.     35 U.S.C. § 156(d)(2)(A) is a statutory mandate, requiring the PTO to provide notice and a copy of the PTE Application to the FDA, within 60 days of submission of the application to the PTO. The PTO failed to comply with this deadline.

14.     Instead, on December 22, 2006, nearly eight months after Plaintiff filed its PTE Application, and nearly six months after the statutory mandate of 35 U.S.C. § 156(d)(2)(A) had passed, the PTO sent the PTE Application along with a communication to the FDA indicating the PTO's preliminary view that the "subject patent would NOT be eligible for extension of the patent term under 35 U.S.C. § 156." (emphasis in original). Confirming the preliminary nature of its assessment, the PTO also emphasized that "this communication is NOT to be considered as notice which may be made in the future pursuant to 35 U.S.C. § 156(d)(2)(A)." (emphasis in original).

15.     The PTO's preliminary assessment stated that the PTO did not agree with Plaintiff that the '579 Patent met the requirements of 35 U.S.C. § 156. Specifically, the PTO stated its preliminary view that "active ingredient" under §156(f)(2) of the statute encompasses all forms of the active ingredient, including its salt and ester forms. Thus, the PTO reasoned, because the salt form of Selegiline, Selegiline hydrochloride, had been previously approved in therapeutic products subject to pre-marketing regulatory review, EMSAM® did not represent the "first

commercial marketing or use" for Selegiline base.  In support of this position, the PTO relied

upon its reading of the specific provision of the statute at issue, 35 U.S.C. § 156 (f)(2), and upon

*Fisons PLC v. Quigg*, 876 F.2d 99 (Fed. Cir. 1989) and *Pfizer Inc., v. Dr. Reddy's Laboratories,*

*Ltd.*, 359 F.3d 1361 (Fed. Cir. 2004) ("*Pfizer*").

16.    After the PTO's preliminary assessment was sent to the FDA, Plaintiff made repeated

inquiries to the PTO, and Plaintiff's counsel met with PTO officials on February 2, 2007, in an

attempt to obtain a final and favorable decision on the PTE application.  At this interview with

PTO representatives, and subsequently in a written interview summary to the PTO, Plaintiff

explained that the PTO's preliminary position was inconsistent with the statute itself (including

in view of other provisions of 35 U.S.C. § 156 and the legislative history), as well as with the

most relevant precedent, *Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392 (Fed. Cir. 1990)

("*Glaxo*").  Specifically, in *Glaxo*, the Federal Circuit held that the term "active ingredient"

under 35 U.S.C. § 156(f)(2) does *not* mean all forms of the particular active ingredient subject to

regulatory review.  This decision is the most relevant Federal Circuit case law precedent

specifically construing 35 U.S.C. § 156(f)(2), is binding precedent, and was completely ignored

by the panel in *Pfizer*, which construed the term "active ingredient" in a different context.

17.    Despite the interview, additional explanation, and repeated inquiries, the PTO

continued to refuse to provide Plaintiff specific information on the status of its PTE Application,

other than to advise that the PTE Application was still pending and under consideration and that

the PTO was awaiting input from the FDA.  The PTO would not issue a final decision on the

PTE Application until July 12, 2007, more than fourteen months after Somerset submitted its

PTE Application, and with only five weeks to go before the '579 Patent is set to expire.

### *Somerset's Application for Interim Extension*

18.    35 U.S.C. § 156(e)(2) provides that the Director of the PTO shall extend the term of a patent for periods of up to one year, if the term of a patent for which an application has been submitted under 35 U.S.C. § 156 will expire before a certificate of extension is issued or denied. *See also* 37 C.F.R. § 1.760 (2006).

19.    On February 21, 2007, Plaintiff filed an Application for Interim Patent Term Extension Under 35 U.S.C. § 156(e)(2) ("Interim Application") with the PTO.    Plaintiff's Interim Application requested that the term of the '579 Patent be extended for a period of one year from the expiration date of the patent (from August 18, 2007, to August 18, 2008).    Plaintiff further requested that the interim extension continue even if the PTO issues a Final Determination that the '579 Patent is not eligible for extension under 35 U.S.C. § 156, until a final, non-appealable judicial decision on the eligibility of the '579 Patent for term extension is obtained, or until August 18, 2008, whichever is earlier.

20.    Consistent with the PTO's rules and prior practice, a grant of the requested interim extension would avoid any possible hiatus in patent protection for Plaintiff, and would place the public on notice regarding the extension of the term of the patent.    *See In re Reckitt & Coleman Prods., Ltd.*, 230 U.S.P.Q. (BNA) 369, 372, 1986 WL 83591 (Com'r Pat. & Trademarks) (March 17, 1986).

21.    In *Reckitt*, the PTO granted an interim extension to a patent despite a Final Determination by the PTO that the patent was not eligible for extension.    *Id.* at 372.    In that case, the applicant submitted an application for term extension of the patent at issue to the PTO under 35 U.S.C. § 156.    The PTO simultaneously denied the application and granted an interim extension of the patent for one year, or until 14 days after a judicial determination of the patent's eligibility for term extension was rendered by the appropriate appellate court (i.e., the U.S. Court

of Appeal for the Sixth Circuit), whichever was earlier. *Id.* The PTO noted that its decision to grant the interim extension avoided having to address "the question of whether the term of a patent can be extended *nunc pro tunc* after the patent expires." *Id.* at 371.

22.    The PTO further noted in *Reckitt* that the FDA-approved product covered by the patent had been granted three years of non-patent marketing exclusivity by the FDA, meaning that no generic competitors could enter the U.S. market regardless of whether or not the patent was in force for that period of time. *Id.* at 372. Thus, while the interim extension protected the patentee from patent term expiration pending judicial review of the PTO's decision on the underlying application for patent term extension, the product's remaining period of non-patent marketing exclusivity meant that the interim extension would have no practical impact on the public interest.

23.    Like the product at issue in *Reckitt*, EMSAM® has been granted three years of non-patent marketing exclusivity by the FDA, until February 27, 2009. Therefore, no generic competitors can enter the U.S. market until at least February 27, 2009, regardless of whether there is any patent protection available for EMSAM®. The sole purpose of Plaintiff's request to grant the interim extension was to keep the '579 Patent alive until the eligibility of the '579 Patent for term extension could be finally resolved, thus avoiding the question of whether the term of a patent can be extended *nunc pro tunc* after the patent expires.

24.    Plaintiff requested that the PTO decide whether to grant the interim extension within three months from the filing date of the Interim Application, or by May 21, 2007. 37 C.F.R. § 1.760 provides that an applicant should file an application for interim extension at least three months prior to the expiration of the patent, thus setting the regulatory time limit for the PTO to determine whether to grant the interim extension.

25.     The PTO continues to follow the precedent established in *Reckitt*, and recently has shown that it can act quickly in granting an applicant's request for interim extension.  For example, on September 27, 2006, another applicant – Arkion Life Sciences, the holder of Patent No. 4,600,706 – filed an application for interim extension of a patent after the PTO had issued a Final Determination that the patent was not eligible for term extension under 35 U.S.C. § 156.  Less than one month later, on October 20, 2006, the PTO responded by granting another one-year interim extension for the patent (which previously had been granted three one-year interim extensions).  Somerset is aware of this prompt disposition because the PTO brought it up in discussions with Somerset as an example of the availability of interim relief.

26.     Nonetheless, for a period of more than three months after filing, the PTO refused to give Plaintiff any information on the status of Plaintiff's Interim Application, despite repeated inquiries by the Plaintiff, other than to advise that the Interim Application was still pending and under consideration.  The PTO would not issue a final decision on the Interim Application until July 12, 2007, nearly five months after Somerset submitted the application, and with only five weeks to go before the '579 Patent is set to expire.

### *Somerset's Original Complaint and Motion for Preliminary Injunction*

27.     On May 22, 2007, more than three months after the request for interim extension was filed, and still lacking a decision from the PTO on either the Interim Application or the underlying PTE Application, Plaintiff filed its original Complaint and accompanying Motion for Preliminary Injunction, seeking relief in the nature of mandamus under 5 U.S.C. § 706(1) requiring the PTO to both rule upon and affirmatively grant the interim extension pending a final

determination by the PTO on the underlying PTE Application, and extending through any potential judicial review of that decision.

28.    On June 29, 2007, this Court denied the motion for preliminary injunction. Plaintiff filed its Notice of Appeal to the Court of Appeals for the Federal Circuit ("CAFC") on July 2, 2007, and by order of the CAFC is now briefing the appeal on an expedited schedule to conclude with Somerset's reply brief on July 27, 2007.

### *The PTO's July 12 Decision*

29.    On July 12, 2007, shortly after receiving the Order from the CAFC granting Plaintiff's Motion to Expedite, Plaintiff received a Final Determination from the PTO, denying both the Interim Application ("Interim Extension Denial") and the underlying PTE Application ("PTE Denial"). In its decision, the PTO clearly states: "THIS DECISION MAY BE VIEWED AS A FINAL AGENCY ACTION." In its PTE Denial, the PTO maintained its position expressed in the preliminary communication that it sent to the FDA in December of 2006. As to the Interim Extension Denial, despite statutory language and clear precedent to the contrary, the PTO took the position that it could not and would not grant interim extensions after a final decision denying the underlying application for patent term extension.

### COUNT I:  ADMINISTRATIVE PROCEDURE ACT
### 5 U.S.C. § 706

30.    Plaintiff incorporates the allegations in Paragraphs 1 through 29 as if fully set forth herein.

31.    The Director's July 12 Interim Extension Denial is "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law," and therefore may be set aside under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

32.     The Director's July 12 PTE Denial is "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law," and therefore may be set aside under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

33.     As a result of the Director's substantial delay in issuing the PTO's July 12, 2007 decision, the '579 Patent is in danger of expiring on August 18, 2007, without adequate time to secure judicial review of the PTO's July 12 decision to deny any extension of patent life under the Hatch-Waxman Act.  In particular, the one month of patent life remaining is not sufficient time for Somerset to obtain complete judicial review of the Director's PTE Denial.  If the patent were to expire, there is also a substantial risk that it could not be revived, even if the PTO or a court were later to conclude that Somerset was legally entitled to patent term extension. Accordingly, this Amended Complaint is accompanied by a Motion for Temporary Restraining Order and Preliminary Injunction requiring the PTO to extend the patent on a provisional basis pending judicial review of the PTO's July 12 decision.

### Request for Relief

WHEREFORE, Plaintiff respectfully requests that this Court:

a.     Enter an order declaring that the Director's Interim Extension Denial for the '579 Patent is unlawful and reversing that decision accordingly;

b.     Enter an order declaring that the Director's Denial of the PTE Application for the '579 Patent is unlawful and reversing that decision accordingly;

c.     Order such provisional relief as is necessary to prevent expiration of the '579 Patent and to extend the term of that patent pending judicial review of the PTO's July 12, 2007 decision;

e.     Award costs, interest, and attorneys fees to Plaintiff; and

     f.     Order such other and further provisional and permanent relief as the Court

deems just and appropriate.

                                   */s/  David E. Wilks*
                                    David E. Wilks
                                    Del. Bar I.D. 2793
                                    **REED SMITH LLP**
                                    1201 Market Street, Suite 1500
                                    Wilmington, Delaware 19801
                                    Tel.  302.778.7560
                                    Fax 302.778.7575

                                    John M. Faust
                                    **VINSON & ELKINS L.L.P.**
                                    1455 Pennsylvania Avenue, N.W.
                                    Suite 600
                                    Washington, D.C.  20004-1008
                                    Tel. 202.639.6500
                                    Fax  202.639.6604

                                    Counsel for Plaintiff
                                    Somerset Pharmaceuticals, Inc.

July 19, 2007

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SOMERSET PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.:  07-279 (GMS) |
| | ) | |
| v. | ) | |
| | ) | |
| JON W. DUDAS, in his official capacity | ) | |
| as Under Secretary of Commerce for | ) | |
| Intellectual Property and Director of the | ) | |
| United States Patent and Trademark Office, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## AMENDED COMPLAINT [FOR DECLARATORY AND INJUNCTIVE RELIEF]

### Introduction

Plaintiff brings this action [to secure relief in the nature of mandamus compelling the

Director] under the Administrative Procedure Act to set aside, as "arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law," the July 12, 2007 decision of the United

States Patent and Trademark Office ("PTO") [to act upon the] denying extension of Plaintiff's

[application for a one year interim extension to the term of] drug product patent, U.S. Reissue

Patent No. 34,579 ("the ['579 Patent") until August 18, 2008, or until a final non-appealable

judicial decision on the eligibility of the patent for term extension is obtained, whichever is

earlier, in accordance with 35 United States Code § 156(e)(2) (2006) and the decision of the PTO

in *In Re Reckitt*, 230 U.S.P.Q. 369, 1986 WL 83591 (Com'r Pat. & Trademarks) (March 17,

1986).  A true and correct copy of the '579 Patent is attached as Exhibit A to this Complaint]

'579 Patent"), under the Hatch-Waxman Act, 35 U.S.C. § 156. *See* 5 U.S.C. § 706(2)(A).[1] Because Plaintiff's patent will expire on August 18, 2007 unless the Court intervenes, this Amended Complaint is accompanied by a Motion for Temporary Restraining Order and Preliminary Injunction requiring the PTO to undertake any and all measures necessary, as soon as possible and in all events prior to August 17, 2007, to extend the term of the '579 Patent until a final, non-appealable judgment on Plaintiff's claim for judicial review of the PTO's July 12 Denial of Application for Extension of Patent Term and Denial of Application for Interim Extension.

For its Amended Complaint in this matter, Plaintiff alleges as follows:

---

[1]      A true and correct copy of the '579 Patent was attached as Exhibit A to the original Complaint and is incorporated by reference here.

## Parties

1.    Plaintiff Somerset Pharmaceuticals, Inc. ("Somerset") is a pharmaceutical company organized as a corporation under Delaware law.  Somerset's principal place of business is located in Tampa, Florida 33607.

2.    Defendant Jon W. Dudas (the "Director") is Under Secretary of the United States Department of Commerce and Director of the [United States Patent and Trademark Office ("PTO")] PTO.  The PTO is located at Madison Building East, Room 10B20, 600 Dulany St., Alexandria, Virginia 22314.  The Director is sued in his official capacity.  [References to him herein are meant to refer both to him and to his official predecessors as the context requires.]

## Jurisdiction and Venue

3.    This Court has jurisdiction under [both the federal mandamus statute, 28 U.S.C. § 1361, and the federal patent statute, 28 U.S.C. § 1338.] 28 U.S.C. §§ 1331, 1338, and 1361.

4.    Venue is proper in this district under 28 U.S.C. § 1391(e)(3) as the Plaintiff resides in the District of Delaware for purposes of venue under this statute.

## Factual Allegations

### *The Product*

5.    Plaintiff's product, EMSAM® ([selegiline] Selegiline transdermal system), is a patch that is applied to the skin, which is designed to continuously administer the active ingredient of the product.  The sole active ingredient in EMSAM® is [selegiline] Selegiline.  EMSAM® is applied by a patient once a day, and is prescribed as a treatment for major depressive disorder. The continuous administration of [selegiline] Selegiline with the patch offers several significant therapeutic advantages to patients, including reducing the risk of potentially fatal hypertensive crises.

6.    Plaintiff is the owner and assignee of the entire interest in the '579 Patent. The product EMSAM®, as well as a method of using EMSAM®, fall within the scope of certain claims of the '579 Patent.

7.    Currently, the term of the '579 Patent is set to expire on August 18, 2007.

### *Somerset's Application for Patent Term Extension*

8.    35 U.S.C. § 156 provides that the term of a patent which claims a product or a method of using a product that is the subject of a New Drug Application ("NDA") shall be extended from the original expiration date of the patent to reimburse the NDA Applicant for patent life lost while going through the time-consuming regulatory approval process administered by the Food and Drug Administration ("FDA").    [The patent and the product must meet the statutory requirements set forth in 35 U.S.C. § 156 in order to be eligible for extension of patent term. In particular, the statute requires that the product be the first permitted commercial marketing or use of the single active ingredient present in the drug product, in this case selegiline.]

9.    Plaintiff spent over 11 years of the patent life of the '579 Patent pursuing regulatory approval of EMSAM® by the FDA, leaving the '579 Patent with less than a year and a half of patent life upon approval of the NDA by the FDA on February 27, 2006.

10.    In addition to covering a product subject to pre-marketing regulatory review, the patent and the product must meet the other statutory requirements set forth in 35 U.S.C. § 156 in order to be eligible for extension of patent term. In particular, the statute requires that the product be the first permitted commercial marketing or use of the single active ingredient present in the drug product, in this case Selegiline base. To Plaintiff's knowledge, and as confirmed by a communication dated July 12, 2007 from the FDA to the PTO regarding the EMSAM® product, no product containing Selegiline base as an active ingredient has ever received FDA pre-marketing approval.

11.___ [10.]    On April 27, 2006, Plaintiff timely filed an Application for Extension of Patent Term under 35 U.S.C. § 156 ("PTE Application") for the '579 Patent, based on FDA approval of EMSAM® on February 27, 2006.

12.___ [11.]    Based on the 11 years Plaintiff spent obtaining regulatory approval of EMSAM®, Plaintiff requested extension of the term of the '579 Patent for 5 years, until August 18, 2012, which is the maximum extension of patent term allowable under 35 U.S.C. § 156.

13.___  35 U.S.C. § 156(d)(2)(A) is a statutory mandate, requiring the PTO to provide notice and a copy of the PTE Application to the FDA, within 60 days of submission of the application to the PTO.  The PTO failed to comply with this deadline.

14.___   [12.   On December 22, 2006, the PTO wrote]  Instead, on December 22, 2006, nearly eight months after Plaintiff filed its PTE Application, and nearly six months after the statutory mandate of 35 U.S.C. § 156(d)(2)(A) had passed, the PTO sent the PTE Application along with a communication to the FDA indicating the PTO's preliminary view that the "subject patent would NOT be eligible for extension of the patent term under 35 U.S.C. § 156." (emphasis in original).  Confirming the preliminary nature of its assessment, the PTO also emphasized that "this communication is NOT to be considered as notice which may be made in the future pursuant to 35 U.S.C. § 156(d)(2)(A)." (emphasis in original).

15.___   [13.   Notwithstanding the PTO's preliminary indication, Plaintiff maintains that the '579 Patent is entitled to term extension in accordance with the proper statutory construction of 35 U.S.C. § 156.]  The PTO's preliminary assessment stated that the PTO did not agree with Plaintiff that the '579 Patent met the requirements of 35 U.S.C. § 156.  Specifically, the PTO stated its preliminary view that "active ingredient" under §156(f)(2) of the statute encompasses all forms of the active ingredient, including its salt and ester forms.  Thus, the PTO reasoned,

because the salt form of Selegiline, Selegiline hydrochloride, had been previously approved in therapeutic products subject to pre-marketing regulatory review, EMSAM® did not represent the "first commercial marketing or use" for Selegiline base.  In support of this position, the PTO relied upon its reading of the specific provision of the statute at issue, 35 U.S.C. § 156 (f)(2), and upon *Fisons PLC v. Quigg*, 876 F.2d 99 (Fed. Cir. 1989) and *Pfizer Inc., v. Dr. Reddy's Laboratories, Ltd.*, 359 F.3d 1361 (Fed. Cir. 2004) ("*Pfizer*").

    16.    After the PTO's preliminary assessment was sent to the FDA, Plaintiff made repeated inquiries to the PTO, and Plaintiff's counsel met with PTO officials on February 2, 2007, in an attempt to obtain a final and favorable decision on the PTE application.  At this interview with PTO representatives, and subsequently in a written interview summary to the PTO, Plaintiff explained that the PTO's preliminary position was inconsistent with the statute itself (including in view of other provisions of 35 U.S.C. § 156 and the legislative history), as well as with the most relevant precedent, *Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392 (Fed. Cir. 1990) ("*Glaxo*").  Specifically, in *Glaxo*, the Federal Circuit held that the term "active ingredient" under 35 U.S.C. § 156(f)(2) does *not* mean all forms of the particular active ingredient subject to regulatory review.   This decision is the most relevant Federal Circuit case law precedent specifically construing 35 U.S.C. § 156(f)(2), is binding precedent, and was completely ignored by the panel in *Pfizer*, which construed the term "active ingredient" in a different context.

    17.    [14.    The PTO has not yet made a final decision on the eligibility of the '579 Patent for term extension, and has not provided Plaintiff with a timeframe in which it will make a final decision on the matter.  Further, the PTO failed to comply with the statutory requirement of 35 U.S.C. § 156(d)(2)(A) to provide notice to the FDA, along with a copy of the PTE Application, within 60 days of submission of the application.  That statutory deadline passed

nearly a year ago, on June 26, 2006. Since then, despite repeated inquiries, the PTO has refused to give Plaintiff any] Despite the interview, additional explanation, and repeated inquiries, the PTO continued to refuse to provide Plaintiff specific information on the status of Plaintiff'sits PTE Application, other than to advise that the PTE Application iswas still pending and under consideration. and that the PTO was awaiting input from the FDA. The PTO would not issue a final decision on the PTE Application until July 12, 2007, more than fourteen months after Somerset submitted its PTE Application, and with only five weeks to go before the '579 Patent is set to expire.

[15.    At this point, given the PTO's failure to act promptly on the PTE Application as required by statute, there is insufficient time for Somerset to protect its rights should the Director now decide to deny the PTE Application. Even if the PTE Application were denied today, it is unlikely that, within the less than three months of patent life remaining, Somerset could obtain complete administrative and/or judicial review of the decision in this Court and, if necessary, on appeal.]

## *Somerset's Application for Interim Extension*

18.___ [16.]        35 U.S.C. § 156(e)(2) provides that the Director of the PTO shall extend the term of a patent for periods of up to one year, if the term of a patent for which an application has been submitted under 35 U.S.C. § 156 will expire before a certificate òf extension is issued or denied. *See also* 37 C.F.R. § 1.760 (2006).

19.___ [17.]        On February 21, 2007, Plaintiff filed an Application for Interim Patent Term Extension Under 35 U.S.C. § 156(e)(2) ("Interim Application [for Interim Extension]") with the PTO. Plaintiff's Interim Application [for Interim Extension] requested that the term of the '579 Patent be extended for a period of one year from the expiration date of the patent (from August 18, 2007, to August 18, 2008). Plaintiff further requested that the interim extension

[will] continue even if the PTO issues a Final Determination that the '579 Patent is not eligible for extension under 35 U.S.C. § 156, until a final, non-appealable judicial decision on the eligibility of the '579 Patent for term extension is obtained, or until August 18, 2008, whichever is earlier.

20.___ [18.]    Consistent with the PTO's rules and prior practice, a grant of the requested interim extension [will] would avoid any possible hiatus in patent protection for Plaintiff, and [will] would place the public on notice regarding the extension of the term of the patent. *See In re Reckitt & Coleman Prods., Ltd.*, 230 U.S.P.Q. (BNA) 369, 372, 1986 WL 83591 (Com'r Pat. & Trademarks) (March 17, 1986).

21.___ [19.]    In *Reckitt*, the PTO granted an interim extension to a patent despite a Final Determination by the PTO that the patent was not eligible for extension. *Id.* at 372.  In that case, the applicant submitted an application for term extension of the patent at issue to the PTO under 35 U.S.C. § 156.   The PTO simultaneously denied the application and granted an interim extension of the patent for one year, or until 14 days after a judicial determination of the patent's eligibility for term extension was rendered by the appropriate appellate court (i.e., the U.S. Court of Appeal for the Sixth Circuit), whichever was earlier. *Id.*   The PTO noted that its decision to grant the interim extension avoided having to address "the question of whether the term of a patent can be extended *nunc pro tunc* after the patent expires." *Id.* at 371.

22.___ [20.]    The PTO further noted in *Reckitt* that the FDA-approved product covered by the patent had been granted three years of non-patent marketing exclusivity by the FDA, meaning that no generic competitors could enter the U.S. market regardless of whether or not the patent was in force for that period of time. *Id.* at 372.   Thus, while the interim extension protected the patentee from patent term expiration pending judicial review of the PTO's decision

8

on the underlying application for patent term extension, the product's remaining period of non-patent marketing exclusivity meant that the interim extension would have no practical impact on the public interest.

23.___ [21.]       Like the product at issue in *Reckitt*, EMSAM® has been granted three years of non-patent marketing exclusivity by the FDA, until February 27, 2009. Therefore, no generic competitors can enter the U.S. market until at least February 27, 2009, regardless of whether there is any patent protection available for EMSAM®. The sole purpose of Plaintiff's request to grant the interim extension ~~is~~was to keep the ''579 Patent alive until the eligibility of the ''579 Patent for term extension ~~is~~could be finally resolved, thus avoiding the question of whether the term of a patent can be extended *nunc pro tunc* after the patent expires.

24.___ [22.]       Plaintiff requested that the PTO decide whether to grant the interim extension within three months from the filing date of the Interim Application ~~for Interim Extension,~~ or by May 21, 2007. 37 C.F.R. § 1.760 provides that an applicant should file an application for interim extension at least three months prior to the expiration of the patent, thus setting the regulatory time limit for the PTO to determine whether to grant the interim extension.

25.___ [23.]       The PTO continues to follow the precedent established in *Reckitt*, and recently has shown that it can act quickly in granting an applicant's request for interim extension. For example, on September 27, 2006, another applicant – Arkion Life Sciences, the holder of Patent No. 4,600,706 – filed an application for interim extension of a patent after the PTO had issued a Final Determination that the patent was not eligible for term extension under 35 U.S.C. § 156. Less than one month later, on October 20, 2006, the PTO responded by granting another one-year interim extension for the patent (which previously had been granted three one-year

interim extensions). Somerset is aware of this prompt disposition because the PTO brought it up in discussions with Somerset as an example of the availability of interim relief.

26.___ [24.]        Nonetheless, for a period of more than three months after filing, the PTO [has] refused to give Plaintiff any information on the status of Plaintiff's Interim Application [for Interim Extension], despite repeated inquiries by the Plaintiff, other than to advise that the Interim Application [for Interim Extension is] was still pending and under consideration. The PTO would not issue a final decision on the Interim Application until July 12, 2007, nearly five months after Somerset submitted the application, and with only five weeks to go before the '579 Patent is set to expire.

### *Somerset's Original Complaint and Motion for Preliminary Injunction*

27.___ On May 22, 2007, more than three months after the request for interim extension was filed, and still lacking a decision from the PTO on either the Interim Application or the underlying PTE Application, Plaintiff filed its original Complaint and accompanying Motion for Preliminary Injunction, seeking relief in the nature of mandamus under 5 U.S.C. § 706(1) requiring the PTO to both rule upon and affirmatively grant the interim extension pending a final determination by the PTO on the underlying PTE Application, and extending through any potential judicial review of that decision.

28.___ On June 29, 2007, this Court denied the motion for preliminary injunction. Plaintiff filed its Notice of Appeal to the Court of Appeals for the Federal Circuit ("CAFC") on July 2, 2007, and by order of the CAFC is now briefing the appeal on an expedited schedule to conclude with Somerset's reply brief on July 27, 2007.

### *The PTO's July 12 Decision*

29.    On July 12, 2007, shortly after receiving the Order from the CAFC granting Plaintiff's Motion to Expedite, Plaintiff received a Final Determination from the PTO, denying both the Interim Application ("Interim Extension Denial") and the underlying PTE Application ("PTE Denial"). In its decision, the PTO clearly states: "THIS DECISION MAY BE VIEWED AS A FINAL AGENCY ACTION." In its PTE Denial, the PTO maintained its position expressed in the preliminary communication that it sent to the FDA in December of 2006. As to the Interim Extension Denial, despite statutory language and clear precedent to the contrary, the PTO took the position that it could not and would not grant interim extensions after a final decision denying the underlying application for patent term extension.

## COUNT I:  ADMINISTRATIVE PROCEDURE ACT
### 5 U.S.C. § 706

30.    [25.]    Plaintiff incorporates the allegations in Paragraphs 1 through 2429 as if fully set forth herein.

[26.    Pursuant to 35 U.S.C. § 156(e)(2), as construed by the PTO in 37 C.F.R. § 1.760 and *Reckitt*, the Director has a clear legal duty to decide Plaintiff's timely Application for Interim Extension of the '579 Patent in sufficient time to protect Plaintiff from expiration of its patent prior to the issuance of a final, non-appealable decision on its underlying PTE Application, and in any event within 90 days.

27.    The Director has a further clear legal duty to grant the requested interim extension. Plaintiff's request meets all of the requirements of the statute and 37 C.F.R. § 1.760, and is in accordance with the PTO precedent as set forth in *Reckitt* and in the recent case of U.S. Patent No. 4,600,706. Given those clear precedents and their plain applicability to this situation,

a decision to deny the interim extension could be set aside as arbitrary and capricious agency action under the Administrative Protective Act, 5 U.S.C. § 706.]

31.     The Director's July 12 Interim Extension Denial is "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law," and therefore may be set aside under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

32.     [28.     Inasmuch as Plaintiff's request has not even been acted upon, the Director has not discharged his clear legal obligations.  The Director's ongoing failure to discharge his duty to decide upon, and indeed to grant, an interim extension for the '579 Patent constitutes "action unlawfully withheld or unreasonably delayed"]  The Director's July 12 PTE Denial is "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law," and therefore may be set aside under the Administrative Procedure Act, 5 U.S.C. § 706(12) (A).

33.     [29.]     As a result of the Director's [inaction on both the Application for Interim Extension and the underlying PTE Application, there is a danger that the '579 will expire on August 18, 2007, either without an adjudication by the PTO of Somerset's statutory right to patent term extension or] substantial delay in issuing the PTO's July 12, 2007 decision, the '579 Patent is in danger of expiring on August 18, 2007, without adequate time to secure [administrative and/or] judicial review of [a] the PTO's July 12 decision [denying that right.  In particular, there is a significant risk that, if the patent were to expire] to deny any extension of patent life under the Hatch-Waxman Act.  In particular, the one month of patent life remaining is not sufficient time for Somerset to obtain complete judicial review of the Director's PTE Denial. If the patent were to expire, there is also a substantial risk that it could not be revived, even if the PTO or a court were later to conclude that Somerset was legally entitled to patent term extension. [The less than three months of patent life remaining are not sufficient time for Somerset to obtain

complete administrative and/or judicial review of a decision by the Director denying its PTE

Application, even if such a decision were issued today.] Accordingly, this Amended Complaint

is accompanied by a Motion for Temporary Restraining Order and Preliminary Injunction

requiring the PTO to extend the patent on a provisional basis pending judicial review of the

PTO's July 12 decision.

[30.    Declaratory and injunctive relief in the nature of mandamus is the only adequate

remedy available to Plaintiff to compel the Director to act promptly and appropriately on

Plaintiff's Application for Interim Extension.]

### Request for Relief

WHEREFORE, Plaintiff respectfully requests that this Court:

a.    Enter an order declaring that the Director's [failure to decide Plaintiff's

Application for] Interim Extension [of] Denial for the [term of the] '579 Patent is

unlawful and reversing that decision accordingly;

b.    Enter an order declaring that the Director's [failure to grant Plaintiff's]

Denial of the PTE Application for [Interim Extension of the term of] the '579 Patent is

unlawful and reversing that decision accordingly;

c.    [Enter an order compelling the Director to immediately decide upon

Plaintiff's Application for Interim Extension;

d.    Enter an order compelling the Director to immediately grant an interim

extension of the term of the '579 Patent for a period of one year from the expiration date

of the patent, until August 18, 2008, or until a final, non-appealable judicial decision of

the eligibility PTE Application is obtained, whichever is earlier, and that the interim

extension shall continue even if the PTO issues a Final Determination that the '579 Patent

is not eligible for extension under 35 U.S.C. § 156] Order such provisional relief as is

necessary to prevent expiration of the '579 Patent and to extend the term of that patent

pending judicial review of the PTO's July 12, 2007 decision;

      e.      Award costs, interest, and attorneys fees to Plaintiff; and

      f.      Order such other and further provisional and permanent relief as the Court

deems just and appropriate.

          /s/ David E. Wilks

David E. Wilks
Del. Bar I.D. 2793
**REED SMITH LLP**
1201 Market Street, Suite 1500
Wilmington, Delaware 19801
Tel.  302.778.7560
Fax 302.778.7575

John M. Faust
**VINSON & ELKINS L.L.P.**
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C.  20004-1008
Tel. 202.639.6500
Fax  202.639.6604

Counsel for Plaintiff
Somerset Pharmaceuticals, Inc.

[May 22]July 19, 2007

Document comparison done by DeltaView on Thursday, July 19, 2007 4:52:04 PM

| Input: | |
|---|---|
| Document 1 | pcdocs://willib/53882/1 |
| Document 2 | pcdocs://willib/54742/1 |
| Rendering set | ReedSmith Standard |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 84 |
| Deletions | 81 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 165 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SOMERSET PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.:  07-279 (GMS) |
| | ) | |
| v. | ) | |
| | ) | |
| JON W. DUDAS, in his official capacity | ) | |
| as Under Secretary of Commerce for | ) | |
| Intellectual Property and Director of the | ) | |
| United States Patent and Trademark Office, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## AMENDED COMPLAINT [FOR DECLARATORY AND INJUNCTIVE RELIEF]

### Introduction

Plaintiff brings this action [to secure relief in the nature of mandamus compelling the Director] under the Administrative Procedure Act to set aside, as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," the July 12, 2007 decision of the United States Patent and Trademark Office ("PTO") [to act upon the] denying extension of Plaintiff's [application for a one year interim extension to the term of] drug product patent, U.S. Reissue Patent No. 34,579 ("the ['579 Patent") until August 18, 2008, or until a final non-appealable judicial decision on the eligibility of the patent for term extension is obtained, whichever is earlier, in accordance with 35 United States Code § 156(e)(2) (2006) and the decision of the PTO in *In Re Reckitt*, 230 U.S.P.Q. 369, 1986 WL 83591 (Com'r Pat. & Trademarks) (March 17, 1986).  A true and correct copy of the '579 Patent is attached as Exhibit A to this Complaint]

'579 Patent"), under the Hatch-Waxman Act, 35 U.S.C. § 156.  *See* 5 U.S.C. § 706(2)(A).[1] Because Plaintiff's patent will expire on August 18, 2007 unless the Court intervenes, this Amended Complaint is accompanied by a Motion for Temporary Restraining Order and Preliminary Injunction requiring the PTO to undertake any and all measures necessary, as soon as possible and in all events prior to August 17, 2007, to extend the term of the '579 Patent until a final, non-appealable judgment on Plaintiff's claim for judicial review of the PTO's July 12 Denial of Application for Extension of Patent Term and Denial of Application for Interim Extension.

For its Amended Complaint in this matter, Plaintiff alleges as follows:

---

[1]    A true and correct copy of the '579 Patent was attached as Exhibit A to the original Complaint and is incorporated by reference here.

## Parties

1.    Plaintiff Somerset Pharmaceuticals, Inc. ("Somerset") is a pharmaceutical company organized as a corporation under Delaware law.  Somerset's principal place of business is located in Tampa, Florida 33607.

2.    Defendant Jon W. Dudas (the "Director") is Under Secretary of the United States Department of Commerce and Director of the [United States Patent and Trademark Office ("PTO")] PTO.  The PTO is located at Madison Building East, Room 10B20, 600 Dulany St., Alexandria, Virginia 22314.  The Director is sued in his official capacity.  [References to him herein are meant to refer both to him and to his official predecessors as the context requires.]

## Jurisdiction and Venue

3.    This Court has jurisdiction under [both the federal mandamus statute, 28 U.S.C. § 1361, and the federal patent statute, 28 U.S.C. § 1338.] 28 U.S.C. §§ 1331, 1338, and 1361.

4.    Venue is proper in this district under 28 U.S.C. § 1391(e)(3) as the Plaintiff resides in the District of Delaware for purposes of venue under this statute.

## Factual Allegations

### *The Product*

5.    Plaintiff's product, EMSAM® ([selegiline] Selegiline transdermal system), is a patch that is applied to the skin, which is designed to continuously administer the active ingredient of the product.  The sole active ingredient in EMSAM® is [selegiline] Selegiline.  EMSAM® is applied by a patient once a day, and is prescribed as a treatment for major depressive disorder. The continuous administration of [selegiline] Selegiline with the patch offers several significant therapeutic advantages to patients, including reducing the risk of potentially fatal hypertensive crises.

3

6.    Plaintiff is the owner and assignee of the entire interest in the '579 Patent.   The product EMSAM®, as well as a method of using EMSAM®, fall within the scope of certain claims of the '579 Patent.

7.    Currently, the term of the '579 Patent is set to expire on August 18, 2007.

### *Somerset's Application for Patent Term Extension*

8.    35 U.S.C. § 156 provides that the term of a patent which claims a product or a method of using a product that is the subject of a New Drug Application ("NDA") shall be extended from the original expiration date of the patent to reimburse the NDA Applicant for patent life lost while going through the time-consuming regulatory approval process administered by the Food and Drug Administration ("FDA").    [The patent and the product must meet the statutory requirements set forth in 35 U.S.C. § 156 in order to be eligible for extension of patent term.  In particular, the statute requires that the product be the first permitted commercial marketing or use of the single active ingredient present in the drug product, in this case selegiline.]

9.    Plaintiff spent over 11 years of the patent life of the '579 Patent pursuing regulatory approval of EMSAM® by the FDA, leaving the '579 Patent with less than a year and a half of patent life upon approval of the NDA by the FDA on February 27, 2006.

10.    In addition to covering a product subject to pre-marketing regulatory review, the patent and the product must meet the other statutory requirements set forth in 35 U.S.C. § 156 in order to be eligible for extension of patent term.   In particular, the statute requires that the product be the first permitted commercial marketing or use of the single active ingredient present in the drug product, in this case Selegiline base.  To Plaintiff's knowledge, and as confirmed by a communication dated July 12, 2007 from the FDA to the PTO regarding the EMSAM® product, no product containing Selegiline base as an active ingredient has ever received FDA pre-marketing approval.

11.___ [10.]     On April 27, 2006, Plaintiff timely filed an Application for Extension of Patent Term under 35 U.S.C. § 156 ("PTE Application") for the '579 Patent, based on FDA approval of EMSAM® on February 27, 2006.

12.___ [11.]     Based on the 11 years Plaintiff spent obtaining regulatory approval of EMSAM®, Plaintiff requested extension of the term of the '579 Patent for 5 years, until August 18, 2012, which is the maximum extension of patent term allowable under 35 U.S.C. § 156.

13.___  35 U.S.C. § 156(d)(2)(A) is a statutory mandate, requiring the PTO to provide notice and a copy of the PTE Application to the FDA, within 60 days of submission of the application to the PTO.  The PTO failed to comply with this deadline.

14.___     [12.   On December 22, 2006, the PTO wrote]  Instead, on December 22, 2006, nearly eight months after Plaintiff filed its PTE Application, and nearly six months after the statutory mandate of 35 U.S.C. § 156(d)(2)(A) had passed, the PTO sent the PTE Application along with a communication to the FDA indicating the PTO's preliminary view that the "subject patent would NOT be eligible for extension of the patent term under 35 U.S.C. § 156." (emphasis in original).  Confirming the preliminary nature of its assessment, the PTO also emphasized that "this communication is NOT to be considered as notice which may be made in the future pursuant to 35 U.S.C. § 156(d)(2)(A)." (emphasis in original).

15.___     [13.   Notwithstanding the PTO's preliminary indication, Plaintiff maintains that the '579 Patent is entitled to term extension in accordance with the proper statutory construction of 35 U.S.C. § 156.]  The PTO's preliminary assessment stated that the PTO did not agree with Plaintiff that the '579 Patent met the requirements of 35 U.S.C. § 156.  Specifically, the PTO stated its preliminary view that "active ingredient" under §156(f)(2) of the statute encompasses all forms of the active ingredient, including its salt and ester forms.  Thus, the PTO reasoned,

because the salt form of Selegiline, Selegiline hydrochloride, had been previously approved in

therapeutic products subject to pre-marketing regulatory review, EMSAM® did not represent the

"first commercial marketing or use" for Selegiline base.  In support of this position, the PTO

relied upon its reading of the specific provision of the statute at issue, 35 U.S.C. § 156 (f)(2), and

upon *Fisons PLC v. Quigg*, 876 F.2d 99 (Fed. Cir. 1989) and *Pfizer Inc., v. Dr. Reddy's*

*Laboratories, Ltd.*, 359 F.3d 1361 (Fed. Cir. 2004) ("*Pfizer*").

     16.    After the PTO's preliminary assessment was sent to the FDA, Plaintiff made repeated

inquiries to the PTO, and Plaintiff's counsel met with PTO officials on February 2, 2007, in an

attempt to obtain a final and favorable decision on the PTE application.  At this interview with

PTO representatives, and subsequently in a written interview summary to the PTO, Plaintiff

explained that the PTO's preliminary position was inconsistent with the statute itself (including

in view of other provisions of 35 U.S.C. § 156 and the legislative history), as well as with the

most relevant precedent, *Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392 (Fed. Cir. 1990)

("*Glaxo*").  Specifically, in *Glaxo*, the Federal Circuit held that the term "active ingredient"

under 35 U.S.C. § 156(f)(2) does *not* mean all forms of the particular active ingredient subject to

regulatory review.  This decision is the most relevant Federal Circuit case law precedent

specifically construing 35 U.S.C. § 156(f)(2), is binding precedent, and was completely ignored

by the panel in *Pfizer*, which construed the term "active ingredient" in a different context.

     17.   [14.    The PTO has not yet made a final decision on the eligibility of the '579

Patent for term extension, and has not provided Plaintiff with a timeframe in which it will make a

final decision on the matter.  Further, the PTO failed to comply with the statutory requirement of

35 U.S.C. § 156(d)(2)(A) to provide notice to the FDA, along with a copy of the PTE

Application, within 60 days of submission of the application.  That statutory deadline passed

nearly a year ago, on June 26, 2006.  Since then, despite repeated inquiries, the PTO has refused

to give Plaintiff any] Despite the interview, additional explanation, and repeated inquiries, the

PTO continued to refuse to provide Plaintiff specific information on the status of Plaintiff's its

PTE Application, other than to advise that the PTE Application is was still pending and under

consideration. and that the PTO was awaiting input from the FDA.  The PTO would not issue a

final decision on the PTE Application until July 12, 2007, more than fourteen months after

Somerset submitted its PTE Application, and with only five weeks to go before the '579 Patent is

set to expire.

[15.    At this point, given the PTO's failure to act promptly on the PTE Application as

required by statute, there is insufficient time for Somerset to protect its rights should the Director

now decide to deny the PTE Application.  Even if the PTE Application were denied today, it is

unlikely that, within the less than three months of patent life remaining, Somerset could obtain

complete administrative and/or judicial review of the decision in this Court and, if necessary, on

appeal.]

### *Somerset's Application for Interim Extension*

18.    [16.]        35 U.S.C. § 156(e)(2) provides that the Director of the PTO shall extend

the term of a patent for periods of up to one year, if the term of a patent for which an application

has been submitted under 35 U.S.C. § 156 will expire before a certificate of extension is issued

or denied.  *See also* 37 C.F.R. § 1.760 (2006).

19.    [17.]        On February 21, 2007, Plaintiff filed an Application for Interim Patent

Term Extension Under 35 U.S.C. § 156(e)(2) ("Interim Application [for Interim Extension]")

with the PTO.  Plaintiff's Interim Application [for Interim Extension] requested that the term of

the '579 Patent be extended for a period of one year from the expiration date of the patent (from

August 18, 2007, to August 18, 2008).  Plaintiff further requested that the interim extension

[will] continue even if the PTO issues a Final Determination that the '579 Patent is not eligible for extension under 35 U.S.C. § 156, until a final, non-appealable judicial decision on the eligibility of the '579 Patent for term extension is obtained, or until August 18, 2008, whichever is earlier.

20.___ [18.]    Consistent with the PTO's rules and prior practice, a grant of the requested interim extension [will] would avoid any possible hiatus in patent protection for Plaintiff, and [will] would place the public on notice regarding the extension of the term of the patent. *See In re Reckitt & Coleman Prods., Ltd.,* 230 U.S.P.Q. (BNA) 369, 372, 1986 WL 83591 (Com'r Pat. & Trademarks) (March 17, 1986).

21.___ [19.]    In *Reckitt*, the PTO granted an interim extension to a patent despite a Final Determination by the PTO that the patent was not eligible for extension. *Id.* at 372. In that case, the applicant submitted an application for term extension of the patent at issue to the PTO under 35 U.S.C. § 156. The PTO simultaneously denied the application and granted an interim extension of the patent for one year, or until 14 days after a judicial determination of the patent's eligibility for term extension was rendered by the appropriate appellate court (i.e., the U.S. Court of Appeal for the Sixth Circuit), whichever was earlier. *Id.* The PTO noted that its decision to grant the interim extension avoided having to address "the question of whether the term of a patent can be extended *nunc pro tunc* after the patent expires." *Id.* at 371.

22.___ [20.]    The PTO further noted in *Reckitt* that the FDA-approved product covered by the patent had been granted three years of non-patent marketing exclusivity by the FDA, meaning that no generic competitors could enter the U.S. market regardless of whether or not the patent was in force for that period of time. *Id.* at 372. Thus, while the interim extension protected the patentee from patent term expiration pending judicial review of the PTO's decision

on the underlying application for patent term extension, the product's remaining period of non-patent marketing exclusivity meant that the interim extension would have no practical impact on the public interest.

23.___ [21.]    Like the product at issue in *Reckitt*, EMSAM® has been granted three years of non-patent marketing exclusivity by the FDA, until February 27, 2009. Therefore, no generic competitors can enter the U.S. market until at least February 27, 2009, regardless of whether there is any patent protection available for EMSAM®. The sole purpose of Plaintiff's request to grant the interim extension ~~is~~was to keep the ²579 Patent alive until the eligibility of the ²579 Patent for term extension ~~is~~could be finally resolved, thus avoiding the question of whether the term of a patent can be extended *nunc pro tunc* after the patent expires.

24.___ [22.]    Plaintiff requested that the PTO decide whether to grant the interim extension within three months from the filing date of the Interim Application ~~for Interim Extension~~, or by May 21, 2007. 37 C.F.R. § 1.760 provides that an applicant should file an application for interim extension at least three months prior to the expiration of the patent, thus setting the regulatory time limit for the PTO to determine whether to grant the interim extension.

25.___ [23.]    The PTO continues to follow the precedent established in *Reckitt*, and recently has shown that it can act quickly in granting an applicant's request for interim extension. For example, on September 27, 2006, another applicant – Arkion Life Sciences, the holder of Patent No. 4,600,706 – filed an application for interim extension of a patent after the PTO had issued a Final Determination that the patent was not eligible for term extension under 35 U.S.C. § 156. Less than one month later, on October 20, 2006, the PTO responded by granting another one-year interim extension for the patent (which previously had been granted three one-year

interim extensions).  Somerset is aware of this prompt disposition because the PTO brought it up in discussions with Somerset as an example of the availability of interim relief.

26.___ [24.]        Nonetheless, for a period of more than three months after filing, the PTO [has] refused to give Plaintiff any information on the status of Plaintiff's Interim Application [for Interim Extension], despite repeated inquiries by the Plaintiff, other than to advise that the Interim Application [for Interim Extension is] was still pending and under consideration.  The PTO would not issue a final decision on the Interim Application until July 12, 2007, nearly five months after Somerset submitted the application, and with only five weeks to go before the '579 Patent is set to expire.

### *Somerset's Original Complaint and Motion for Preliminary Injunction*

27.___ On May 22, 2007, more than three months after the request for interim extension was filed, and still lacking a decision from the PTO on either the Interim Application or the underlying PTE Application, Plaintiff filed its original Complaint and accompanying Motion for Preliminary Injunction, seeking relief in the nature of mandamus under 5 U.S.C. § 706(1) requiring the PTO to both rule upon and affirmatively grant the interim extension pending a final determination by the PTO on the underlying PTE Application, and extending through any potential judicial review of that decision.

28.___ On June 29, 2007, this Court denied the motion for preliminary injunction.  Plaintiff filed its Notice of Appeal to the Court of Appeals for the Federal Circuit ("CAFC") on July 2, 2007, and by order of the CAFC is now briefing the appeal on an expedited schedule to conclude with Somerset's reply brief on July 27, 2007.

### *The PTO's July 12 Decision*

29.     On July 12, 2007, shortly after receiving the Order from the CAFC granting Plaintiff's Motion to Expedite, Plaintiff received a Final Determination from the PTO, denying both the Interim Application ("Interim Extension Denial") and the underlying PTE Application ("PTE Denial").  In its decision, the PTO clearly states:  "THIS DECISION MAY BE VIEWED AS A FINAL AGENCY ACTION."   In its PTE Denial, the PTO maintained its position expressed in the preliminary communication that it sent to the FDA in December of 2006.  As to the Interim Extension Denial, despite statutory language and clear precedent to the contrary, the PTO took the position that it could not and would not grant interim extensions after a final decision denying the underlying application for patent term extension.

## COUNT I:  ADMINISTRATIVE PROCEDURE ACT
### 5 U.S.C. § 706

30.    [25.]     Plaintiff incorporates the allegations in Paragraphs 1 through 2429 as if fully set forth herein.

[26.     Pursuant to 35 U.S.C. § 156(e)(2), as construed by the PTO in 37 C.F.R. § 1.760 and *Reckitt*, the Director has a clear legal duty to decide Plaintiff's timely Application for Interim Extension of the '579 Patent in sufficient time to protect Plaintiff from expiration of its patent prior to the issuance of a final, non-appealable decision on its underlying PTE Application, and in any event within 90 days.

27.     The Director has a further clear legal duty to grant the requested interim extension.  Plaintiff's request meets all of the requirements of the statute and 37 C.F.R. § 1.760, and is in accordance with the PTO precedent as set forth in *Reckitt* and in the recent case of U.S. Patent No. 4,600,706.  Given those clear precedents and their plain applicability to this situation,

a decision to deny the interim extension could be set aside as arbitrary and capricious agency action under the Administrative Protective Act, 5 U.S.C. § 706.]

31.____ The Director's July 12 Interim Extension Denial is "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law," and therefore may be set aside under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

32.____ [28.     Inasmuch as Plaintiff's request has not even been acted upon, the Director has not discharged his clear legal obligations.  The Director's ongoing failure to discharge his duty to decide upon, and indeed to grant, an interim extension for the '579 Patent constitutes "action unlawfully withheld or unreasonably delayed"]  The Director's July 12 PTE Denial is "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law," and therefore may be set aside under the Administrative Procedure Act, 5 U.S.C. § 706(1̶2̶)̶.̶ (A).

33.____ [29.]     As a result of the Director's [inaction on both the Application for Interim Extension and the underlying PTE Application, there is a danger that the '579 will expire on August 18, 2007, either without an adjudication by the PTO of Somerset's statutory right to patent term extension or] substantial delay in issuing the PTO's July 12, 2007 decision, the '579 Patent is in danger of expiring on August 18, 2007, without adequate time to secure [administrative and/or] judicial review of [a] the PTO's July 12 decision [denying that right.  In particular, there is a significant risk that, if the patent were to expire] to deny any extension of patent life under the Hatch-Waxman Act.  In particular, the one month of patent life remaining is not sufficient time for Somerset to obtain complete judicial review of the Director's PTE Denial. If the patent were to expire, there is also a substantial risk that it could not be revived, even if the PTO or a court were later to conclude that Somerset was legally entitled to patent term extension. [The less than three months of patent life remaining are not sufficient time for Somerset to obtain

complete administrative and/or judicial review of a decision by the Director denying its PTE

Application, even if such a decision were issued today.] Accordingly, this Amended Complaint

is accompanied by a Motion for Temporary Restraining Order and Preliminary Injunction

requiring the PTO to extend the patent on a provisional basis pending judicial review of the

PTO's July 12 decision.

[30.    Declaratory and injunctive relief in the nature of mandamus is the only adequate

remedy available to Plaintiff to compel the Director to act promptly and appropriately on

Plaintiff's Application for Interim Extension.]

### Request for Relief

WHEREFORE, Plaintiff respectfully requests that this Court:

a.    Enter an order declaring that the Director's [failure to decide Plaintiff's

Application for] Interim Extension [of] Denial for the [term of the] '579 Patent is

unlawful and reversing that decision accordingly;

b.    Enter an order declaring that the Director's [failure to grant Plaintiff's]

Denial of the PTE Application for [Interim Extension of the term of] the '579 Patent is

unlawful and reversing that decision accordingly;

c.    [Enter an order compelling the Director to immediately decide upon

Plaintiff's Application for Interim Extension;

d.    Enter an order compelling the Director to immediately grant an interim

extension of the term of the '579 Patent for a period of one year from the expiration date

of the patent, until August 18, 2008, or until a final, non-appealable judicial decision of

the eligibility PTE Application is obtained, whichever is earlier, and that the interim

extension shall continue even if the PTO issues a Final Determination that the '579 Patent

is not eligible for extension under 35 U.S.C. § 156] Order such provisional relief as is

necessary to prevent expiration of the '579 Patent and to extend the term of that patent pending judicial review of the PTO's July 12, 2007 decision;

      e.      Award costs, interest, and attorneys fees to Plaintiff; and

      f.      Order such other and further provisional and permanent relief as the Court deems just and appropriate.

         /s/ David E. Wilks
        David E. Wilks
        Del. Bar I.D. 2793
        **REED SMITH LLP**
        1201 Market Street, Suite 1500
        Wilmington, Delaware 19801
        Tel.  302.778.7560
        Fax 302.778.7575

        John M. Faust
        **VINSON & ELKINS L.L.P.**
        1455 Pennsylvania Avenue, N.W.
        Suite 600
        Washington, D.C.  20004-1008
        Tel. 202.639.6500
        Fax  202.639.6604

        Counsel for Plaintiff
        Somerset Pharmaceuticals, Inc.

[May 22]July 19, 2007

Document comparison done by DeltaView on Thursday, July 19, 2007 4:52:04 PM

| Input: | |
|---|---|
| Document 1 | pcdocs://willib/53882/1 |
| Document 2 | pcdocs://willib/54742/1 |
| Rendering set | ReedSmith Standard |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 84 |
| Deletions | 81 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 165 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SOMERSET PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. NO.: 07-279 (GMS) |
| | ) | |
| v. | ) | |
| | ) | |
| JON W. DUDAS, in his official capacity | ) | |
| as Under Secretary of Commerce for | ) | |
| Intellectual Property and Director of the | ) | |
| United States Patent and Trademark Office, | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 19, 2007, a copy of the foregoing

**Plaintiff's Motion for Leave to Amend Its Complaint** was served on the following counsel of

record via CM/ECF and Hand Delivery:

COLM CONNELLY
UNITED STATES ATTORNEY
Patricia C. Hannigan
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, Delaware 19899-2046

REED SMITH LLP

_/s/ David E. Wilks_
David E. Wilks (DE Bar ID #2793)