**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SOMERSET PHARMACEUTICALS, INC. | ) |
| | ) |
| Somerset, | ) |
| | ) |
| v. | ) Civil Action No. 07-279 (GMS) |
| | ) |
| JON W. DUDAS, in his official capacity | ) |
| as Under Secretary of Commerce for | ) |
| Intellectual Property and Director of the | ) |
| United States Patent and Trademark Office, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DIRECTOR'S OPPOSITION TO SOMERSET'S SECOND MOTION FOR
PRELIMINARY INJUNCTION**

On July 19, 2007, Somerset Pharmaceuticals, Inc. ("Somerset") filed a Motion for a

Temporary Restraining Order and a Preliminary Injunction. (D.I. 22).   Focusing on the

preliminary injunction part of that motion,[1] Somerset moved this Court for a second time to issue

a preliminary injunction, ordering the Director of the United States Patent and Trademark Office

("USPTO") to temporarily extend[2] the term of its U.S. Reissue Patent No. 34,579 ("the '579

patent").  This is the same relief that Somerset sought in its first preliminary injunction motion,

which this Court denied.  This Court's decision was recently affirmed by the United States Court

---

[1]      The USPTO responded to the temporary restraining order part of Somerset's motion on
July 23, 2007.  (D.I. 26).

[2]      Somerset seeks a "temporary" or a "provisional" extension of its '579 patent pending
final judicial review.  It appears that Somerset uses the words "temporary" or "provisional" in an
attempt to distinguish the extension it now seeks from the "interim" extension it previously
sought under 35 U.S.C. § 156(e)(2) in its first preliminary injunction motion.  Somerset's choice
of words is nothing more than semantics.  The bottom line is that Somerset wants to extend the
'579 patent term after it expires by operation of law on August 18, 2007.  Accordingly, the
USPTO shall refer to the extension requested in Somerset's second preliminary injunction
motion as an "interim extension" herein.

of Appeals for the Federal Circuit ("Federal Circuit").    See Somerset Pharms., Inc. v. Dudas, No. 2007-1447, slip op. at 4 (Fed. Cir. July 31, 2007) (attached as Ex. 1).

As an initial matter, Somerset's second preliminary injunction motion is not proper because Somerset has not amended its complaint to challenge the USPTO's final agency decision, which is the decision underlying its second preliminary injunction motion.

Turning to the merits, Somerset fails to establish that three of the four preliminary injunction factors weigh in its favor. Somerset cannot show that it will prevail on the merits, that it will be irreparably injured by the denial of a preliminary injunction, or that a preliminary injunction is in the public's interest. These factors all weigh in favor of the USPTO, and thus Somerset is not entitled to injunctive relief. Therefore, if this Court is inclined decide Somerset's second preliminary injunction motion, it should deny the motion.

## I.    FACTUAL BACKGROUND

1.    On February 27, 2006, the FDA approved under 21 U.S.C. § 355 Somerset's drug product EMSAM® (selegiline transdermal system) patches, which contain selegiline as the single active ingredient, for the treatment of depression in adults. R220-27.[3]

2.    On April 27, 2006, Somerset timely filed an application for patent term extension under 35 U.S.C. § 156 ("Patent Term Extension Application") with the USPTO.    In that application, Somerset seeks to extend the term of the '579 patent, which offers patent protection for EMSAM®.[4]  R174-291.  Without an extension, the '579 patent will expire by operation of law on August 18, 2007.  R179.

---

[3]    The USPTO filed the certified record with the court on July 24, 2007.  See D.I. 27. Citations to that record appear herein as "R ___."
[4]    A discussion of the basic framework for a patent term extension application may be found in Defendant's Memorandum In Opposition to Somerset's [First] Motion for Preliminary Injunction.  (See D.I. 14 at 2-4).

3.    On December 22, 2006, after reviewing Somerset's Patent Term Extension Application, the USPTO sent a letter to the Food and Drug Administration ("FDA") pursuant to the Memorandum of Understanding between the USPTO and the FDA,[5] asking that agency to confirm the USPTO's belief that the '579 patent was not eligible for a patent term extension because not all of the statutory prerequisites for extension set forth in 35 U.S.C. § 156(a) were met.   R292-94.   Specifically, the USPTO stated that it did not believe that EMSAM® represented the first commercial marketing or use of the active ingredient selegiline as required by section 156(a)(5)(A) because the USPTO understood that the hydrochloride salt form of selegiline had been previously approved by the FDA under 21 U.S.C. § 355. R292 at ¶ 3. The USPTO sought help from the FDA in verifying that its understanding was correct. Id. at ¶ 2.

4.    On February 21, 2007, Somerset filed its interim extension application under 35 U.S.C. § 156(e)(2) ("Interim Extension Application") with the USPTO, seeking a one-year interim extension of the term of the '579 patent, i.e., until August 18, 2008.[6] R337-41.

5.    On May 22, 2007, Somerset filed a Complaint against the USPTO accompanied by a first Motion for a Preliminary Injunction. (D.I. 1)

6.    On June 29, 2007, the Court denied Somerset's first preliminary injunction motion. (D.I. 17).

---

[5]    In 1987, the USPTO and the FDA entered into an agreement concerning, inter alia, patent term extension applications.   See Memorandum of Understanding Between the USPTO and the FDA, 52 Fed. Reg. 17830-17832, 17831 (May 12, 1987).   Under that agreement, the Office's standard policy is to request input from the FDA prior to making a final patent term extension determination. The reason is because the FDA has access to records not otherwise available to the USPTO. As a result, the FDA may be able to provide the USPTO with information not only as to the length of the regulatory review process and the date of approval, but also as to any disqualifying prior approvals of a product, which occurred in this case.

[6]    A discussion of the basic framework for an interim extension application may be found in Defendant's Memorandum In Opposition to Somerset's [First] Motion for Preliminary Injunction. (See D.I. 14 at 4).

7.    On July 2, 2007, Somerset appealed that denial to the Federal Circuit on an expedited basis. (D.I. 19).

8.    Meanwhile, on July 12, 2007, the FDA responded to the USPTO's December 22, 2007 letter, concurring with the USPTO's conclusion that the '579 patent is not eligible for a patent term extension because "the same product [referring to EMSAM®] has previously been approved as a human drug." R342-43.

9.    Also on July 12, 2007, upon receiving the requested input from the FDA, the USPTO issued a final agency decision, denying Somerset's Patent Term Extension Application and its Interim Extension Application. R344-51.

10.    On July 17, 2007, the USPTO answered Somerset's complaint. (D.I. 21).

11.    On July 19, 2007, Somerset sought leave of this Court to amend its complaint, presumably to challenge the merits of the underlying final agency decision issued by the USPTO a week earlier. (D.I. 24). The Court has not yet granted leave to amend.

12.    Also on July 19, 2007, despite its then-pending Federal Circuit appeal seeking a reversal of this Court's denial of a preliminary injunction, Somerset filed a Motion for a Temporary Restraining Order and a Second Preliminary Injunction, again requesting this court to order the USPTO grant an interim extension for its '571 patent through a final judicial review of the underlying final agency decision. (D.I. 22).

13.    On July 31, 2007, the Federal Circuit affirmed this Court's denial of Somerset's first preliminary injunction motion. See Somerset, No. 2007-1447, slip op. at 4.

## II. PLAINTIFF'S SECOND PRELIMINARY INJUNCTION MOTION IS NOT PROPERLY BEFORE THIS COURT

Somerset has not amended its complaint to challenge the USPTO's final agency decision of July 12, 2007, denying its Patent Term Extension Application and its Interim Extension

Application. (Somerset has requested leave to amend, but the Court has not granted it.) Somerset's original complaint did not, and could not, place the merits of the July 12, 2007 decision before this Court because Somerset filed its Complaint on May 22, 2007, a month before the USPTO decided the merits of Somerset's Patent Term Extension Application and its Interim Extension Application. Instead, Somerset's original complaint was directed exclusively to compelling the USPTO to issue a decision on its Patent Term Extension Application and to grant its Interim Extension Application. The USPTO's final agency decision issued on July 12, 2007, has not been brought before this Court for review. Therefore, until such time as Somerset amends its complaint, Somerset's arguments based on the USPTO's final agency decision, for example, its likelihood of success argument, see Br. at 11-17,[7] are not properly before this Court. See Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").

## III.    SOMERSET'S SECOND PRELIMINARY INJUNCTION MOTION SEEKS THE SAME RELIEF AS ITS FIRST PRELIMINARY INJUNCTION MOTION

In addition to asking this Court to review a decision not properly before it, Somerset requests this Court in its second preliminary injunction motion to order the USPTO to "undertake any and all measures necessary to extend the term of [the '579 patent] until such time as there is a final, non-appealable judgment on [Somerset's] claim for judicial review of the PTO's July 12, 2007 Denial of Somerset's Application for Extension of the Patent Term of [the '579 patent] under 35 U.S.C. § 156." (D.I. 22, proposed order). That is exactly the same relief that Somerset sought in its first preliminary injunction motion. (See D.I. 2, proposed order) (proposing this Court order the USPTO to "immediately grant an interim extension of the term of the '579 Patent

---

[7]    References to Somerset's opening brief in support of its second motion for a preliminary injunction are made herein by "Br. at ___."

for a period of one year from the expiration date of the patent, until August 18, 2008, or until a

final, non-appealable judicial decision of the eligibility of Somerset's Application for Patent

Term Extension of the '579 Patent is obtained, whichever is earlier, which interim extension

shall continue even if the PTO issues a Final Determination that the '579 Patent is not eligible

for extension under 35 U.S.C. § 156"

There is only one statute under which the USPTO has the authority to issue an interim

extension—35 U.S.C. § 156(e)(2). That provision states:

> If the term of a patent for which an application has been submitted under
> subsection (d)(1) would expire before a certificate of extension is issued or denied
> under paragraph (1) respecting the application, the Director shall extend, until
> such determination is made, the term of the patent for periods of up to one year if
> he determines that the patent is eligible for extension.

35 U.S.C. 156(e)(2). In its July 31, 2007 decision, the Federal Circuit agreed with the USPTO

that section 156(e)(2) gives the Director the authority to grant an interim extension when the

patent for which a term extension is sought would expire before a certificate of extension is

issued or denied. Somerset, No. 2007-1447, slip op. at 3. The Federal Circuit concluded that

"the Director has no statutory authority to issue the interim extension Somerset seeks" here

because "the Director [] denied Somerset's [Patent Term Extension Application]." Id. Thus,

Somerset's battle for an interim extension under section 156(e)(2) ended at the Federal Circuit.

Somerset's second preliminary injunction motion is nothing more than an end run around section

156(e)(2).

Somerset contends that an interim extension is critical so that it may obtain final judicial

review of the USPTO's July 12, 2007 decision, denying both its Patent Term Extension

Application and its Interim Extension Application. Br. at 3. If Somerset really wanted such

review and time was as critical as Somerset would have this Court believe, Somerset would have

amended its complaint as soon as possible after receiving the July 12, 2007 decision, i.e., on Friday, July 13, 2007. However, Somerset waited nearly a week before doing so. Had it expeditiously amended the complaint, Somerset would be closer to reaching the merits of the USPTO's denial of its Patent Term Extension Application and its Interim Extension Application. In fact, the parties could have been preparing cross-motions for summary judgment on the merits right now as opposed to addressing the preliminary injunction factors once again.

## IV.  SOMERSET'S LEGAL THEORY IS FLAWED

Having lost its first preliminary injunction motion, Somerset appears to have ginned up a new legal theory under which it claims that this Court may issue the same injunctive relief. Specifically, Somerset asserts that section 705 of the Administrative Procedure Act ("APA") empowers this Court to order an agency, like the USPTO, to take affirmative steps to preserve the '579 patent after August 18, 2007, pending full judicial review. Br. at 8-9. Somerset's reliance on section 705 is unavailing for several reasons.

First, the USPTO is authorized to issue an interim extension only under 35 U.S.C. § 156(e)(2). The Federal Circuit has held that Somerset is not entitled to an extension under that provision. See Somerset, No. 2007-1447, slip op. at 3-4. Thus, to the extent Somerset's construction of section 705 would allow the interim extension it seeks for a second time, that construction conflicts with section 156(e)(2). Where a general statute of wide application conflicts with a narrower, specific statute, the narrower statute controls. See Todd v. Merit Sys. Prot. Bd., 55 F.3d 1574, 1577-78 (Fed. Cir. 1995). Therefore, Somerset's contention that section 705 supports an interim extension is wrong.

Second, the statutory language of section 705 does not permit this Court to order the USPTO to act in a certain way. Section 705 states in pertinent part:

> On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal, . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

5 U.S.C. § 705. The language of section 705 is written in terms of preventing governmental action from occurring to disrupt the status quo, i.e., "prohibitive" injunctive relief. It is not written in terms of forcing governmental action, i.e., "affirmative" injunctive relief. Somerset's attempt to avail section 705 to secure the relief already denied by this Court in its first preliminary injunction motion is thus counter to the language of the statute.

Third, giving the language "to preserve status or rights pending conclusion of the review proceedings" in section 705 its plain meaning, section 705 does not help Somerset. Somerset incorrectly defines the "status quo" for the '579 patent as being that the patent is enforceable beyond its term. But, the "status quo" is actually that Somerset's patent expires by operation of law on August 18, 2007. See 35 U.S.C. § 154(a)(2) (setting forth the duration for a patent term).

Fourth, Somerset's reliance on Salt Pond Assocs. v. U.S. Army Corps of Eng'rs., 815 F. Supp. 766 (D. Del. 1993), to support its reading of Section 705 is misplaced. See Br. at 9-10. In that case, this Court addressed the scope of its authority to order relief under section 705. That guidance is instructive here. The Court explained:

> [T]he plain language of this statute reveals that the remedial powers granted to a reviewing court under this section [section 705] are in fact extremely limited. The first section of the statute broadly describes when a court is authorized to act under the section (i.e., "On such conditions as may be required and to the extent necessary to prevent irreparable injury"). The second part of the statute narrowly describes the scope of relief the reviewing court is authorized to grant to the petitioning party ("the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action OR preserve the status or rights pending conclusion of the review proceedings").

Id. at 775-76.  The Court further explained that the scope of relief available under section 705 is limited to only: (1) a postponement of agency action or (2) a preservation of the status or rights of the parties, and the "statute does not confer jurisdiction onto the Court . . . in issuing interim relief to actually dictate specific terms or conditions to a governmental agency."  Id. (emphasis added).  Here, that is precisely what Somerset asks this Court to do, i.e., order the USPTO to affirmatively grant specific relief—an interim extension of the '579 patent—that the USPTO has already denied in a final agency decision.  So, Salt Pond, when correctly read, cuts against Somerset.  Accordingly, both the express language of section 705 and this Court's own interpretation of that statutory provision make clear that such relief is unavailable to Somerset.

## V. SOMERSET'S SECOND PRELIMINARY INJUNCTION MOTION, JUST LIKE ITS FIRST, FAILS ON THE MERITS

Assuming *arguendo* that the USPTO's July 12, 2007 final agency decision denying Somerset's Patent Term Extension Application is properly before the Court and that section 705 gives this Court authority to order the USPTO to act in a certain way, Somerset fails to establish that it is entitled to injunctive relief.  A preliminary injunction under Fed. R. Civ. P. 65 is an extraordinary remedy to be granted sparingly.  Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) ("Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'") (citations omitted); Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319, 1324 (Fed. Cir. 2004) (same).[8]  In determining the appropriateness

---

[8]    Ordinarily, the Federal Circuit would apply the law of the Third Circuit in reviewing any injunction ruling made by this Court.  See Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891, 894 (Fed. Cir. 1998) ("The Federal Circuit has generally viewed the grant of a preliminary injunction as a matter of procedural law not unique to the exclusive jurisdiction of the Federal Circuit, and on appellate review has applied the procedural law of the regional circuit in which the case was brought.") (citation omitted).  However, the Federal Circuit has explained that where the legal issues underlying a preliminary injunction motion are intimately involved in the substance of the enforcement of a patent right, it applies Federal

of issuing a preliminary injunction, a court must consider four factors: "(1) whether the movant has a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by denying the injunction; (3) whether there will be greater harm to the nonmoving party if the injunction is granted; and (4) whether granting the injunction is in the public interest." Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 171 (3d Cir. 2001); Abbott Labs. v. Andrx Pharms. Inc., 473 F.3d 1196, 1200-01 (Fed. Cir. 2007) (same). In deciding a motion for a preliminary injunction, a district court must weigh the appropriate factors, rather than mechanically apply them. U.S. Steel Corp. v. Fraternal Ass'n of Steelhaulers, 431 F.2d 1046, 1048 (3d Cir. 1970); Hybritech, Inc. v. Abbott Labs., 849 F.2d 1446, 1451 (Fed. Cir. 1988) (same). The burden of establishing that injunctive relief is warranted rests on the movant. Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994); Reebok Int'l. Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1555 (Fed. Cir. 1994) (same). Here, three of the four preliminary injunction factors weigh against Somerset.

---

Circuit law to both substantive and procedural issues. See Mylan Pharms., Inc. v. Thompson, 268 F.3d 1323, 1329 n.1 (Fed. Cir. 2001) (explaining that Federal Circuit law applies to both the substantive and procedural issues in a case involving a patentee's rights under the Hatch-Waxman Amendments). The procedural law of the Third Circuit and Federal Circuit is the same with regard to injunctive relief; therefore, the choice of law question is not an issue in this case. Indeed, the Federal Circuit has even recognized that "the general considerations underlying the grant or denial of a preliminary injunction do not vary significantly among the circuits." Mikohn, 165 F.3d at 894.

1.    **Somerset Is Not Likely to Succeed on the Merits Because the USPTO Properly Denied Somerset's Patent Term Extension Application**

a.    **Both 35 U.S.C. § 156 and Case Law Make Clear that Somerset's '579 Patent Is Not Eligible for a Patent Term Extension**

Somerset argues that it is likely to succeed on the merits of its challenge to the USPTO's denial of its Patent Term Extension Application because the USPTO misconstrued the relevant terms "product" and "active ingredient" as used in 35 U.S.C. § 156. Br. at 11-16. Somerset is mistaken. The USPTO's interpretation of these terms comports both with the plain language of section 156 and case law.

Section 156(a) of Title 35 sets forth several requirements that must be met before the Director can extend the term of a patent. <u>See</u> 35 U.S.C. §§ 156 (a)(1)-(a)(5), (d)(1), & (e)(1). Section 156(a)(5)(A) requires that

> the permission for the commercial marketing or use of the <u>product</u> . . . [be] the first permitted commercial marketing or use of the product under the provision of law under which such regulatory review period occurred.

35 U.S.C. §156(a)(5)(A) (emphasis added). The term "product" as used in section 156(a)(5)(A) is defined in section 156(f)(1) as a "drug product," and the term "drug product" is defined in section 156(f)(2) as the "active ingredient of [a] new drug, antibiotic drug, or human biological product . . . including any salt or ester of the active ingredient, as a single entity or in combination with another active ingredient." 35 U.S.C. § 156(f). Thus, by the explicit terms of section 156(f)(2), the term "product" means the "active ingredient" of the new drug product and encompasses "any salt or ester of the active ingredient."

This definition of "product" is confirmed by case law. In <u>Fisons v. Quigg</u>, 1988 WL 150851 (D.D.C. 1988), the district court addressed the meaning of the term "product." After considering the plain language of the statute and its legislative history, the district court

11

concluded that "'product' as used in [s]ubsection (5)(A) refers only to the patented drug's active ingredient." Fisons, 1988 WL 150851 at *5. The Federal Circuit affirmed the district court's interpretation of the definition of "product." See Fisons v. Quigg, 876 F.2d 99, 102 (Fed. Cir. 1989).

After interpreting "product" as meaning "active ingredient" in Fisons, the Federal Circuit went further and interpreted the term "active ingredient" in Pfizer, Inc. v. Dr. Reddy's Labs., Ltd., 359 F.3d 1361 (Fed. Cir. 2004). There, the Federal Circuit accepted the FDA's definition of the term "active ingredient" as meaning "active moiety." Id. at 1366 (citing Abbreviated New Drug Application Regulations: Patent and Exclusivity Provisions, 59 Fed. Reg. 50,338, 50,358 (F.D.A. Oct. 3, 1994). It likewise accepted that "active moiety" means "the molecule or ion excluding those appended portions of the molecule that cause the drug to be an ester, salt . . . responsible for the physiological or pharmacological action of the drug substance" based upon the FDA's regulations. Id. (quoting 21 C.F.R. § 314.108(a)) (omission in original).

Taking Fisons together with Pfizer, the Federal Circuit thus has construed the term "product" as used in section 156(a)(5)(A) to mean the molecule or ion, excluding those appended portions of the molecule that cause the drug to be an ester or salt, responsible for the physiological or pharmacological action of the drug. Simply put, this means that where the FDA has approved the salt or ester of a particular molecule or ion, the "product" that has received FDA approval for purposes of section 156 is only the underlying molecule or ion without any appended portion.

Here, the FDA approved the drug EMSAM® in 2006. Somerset admits in its Patent Term Extension Application that EMSAM® has a single active ingredient—selegiline. See, e.g., R178, 179. Somerset also admits that the FDA previously approved the drug ELDEPRYL®, a

selegiline hydrochloride capsule.    R196, Br. at 12 (admitting "pharmaceuticals containing Selegiline were previously approved")).    The FDA confirmed that ELDEPRYL® was approved before EMSAM®.    R342.    Also, the FDA explained that ZELAPAR®, a selegiline hydrochloride tablet, was approved before EMSAM®.    Id.    Selegiline hydrochloride is an orally administrable salt form of selegiline, the undisputed active ingredient in EMSAM®.

In light of the prior approvals of ELDEPRYL® and ZELAPAR®, the USPTO correctly determined that EMSAM® is not the first commercial marketing or use of the "product" under Fisons and Pfizer.    That is, excluding the appended hydrochloride portion of the molecule which causes it to be a salt, the remaining portion—selegiline—is the "product" that the FDA previously approved in both ELDEPRYL® and ZELAPAR®.    Because the FDA previously approved two drugs having the same active ingredient as EMSAM®, EMSAM® does not represent the first commercial marketing or use of the "product" under 21 U.S.C. § 355. Accordingly, the requirements of 35 U.S.C. § 156(a)(5)(A) are not satisfied, and the USPTO in turn correctly denied Somerset's Patent Term Extension Application.

### b. Somerset's Arguments Alleging that the USPTO Wrongly Denied Its Patent Term Extension Application Are Unpersuasive

Somerset unleashes a series of arguments alleging that the USPTO wrongly denied its Patent Term Extension Application. Br. 12-16. Each of Somerset's arguments is incorrect.

First, Somerset analogizes selegiline and selegiline hydrochloride to the narcotic "crack" cocaine (cocaine base) and the narcotic cocaine hydrochloride (cocaine salt). Br. at 12. In doing so, Somerset explains that selegiline and selegiline hydrochloride, like "crack" cocaine and cocaine hydrochloride, have different physical and pharmacokinetic characteristics. Based upon this analogy, Somerset would have the Court infer that the standard for determining whether two drugs are different "products" for purposes of section 156 is whether the drugs have different

13

physical and pharmacokinetic properties. Such an inference is not correct. Any differences in physical and pharmacokinetic properties may matter only for purposes of regulatory approval; they play no role in an eligibility determination under section 156 as that statute makes no mention of either physical or pharmacokinetic properties.

Second, Somerset argues that the USPTO's statutory construction runs afoul of Glaxo Operations UK Ltd v. Quigg, 894 F.2d 392 (Fed. Cir. 1990). Br. at 13-14. Specifically, Somerset contends "the Federal Circuit held [in Glaxo] that 'active ingredient' does not equal 'active moiety' (i.e., new chemical entity)." Id. Somerset is mistaken. The Federal Circuit made no such holding.

In the passage that Somerset relies upon, the Federal Circuit did not address the definition of "active ingredient." Rather, the Federal Circuit focused on the USPTO's argument that the term "product" did not have the literal meaning set forth in section 156(f)(2), but instead meant "any 'new chemical entity,' i.e., 'new active moiety.'" In rejecting that argument, the Federal Circuit explained that Congress provided a definition of the term "product" in section 156(f)(2) and that Congress "selected terms with narrow meanings that it chose from among many alternatives." Glaxo, 894 F.2d at 399 (footnoting as examples of other possible words "new molecular entity," "active moiety," and "new chemical entity"). In fact, the Federal Circuit Court did not opine at all on the definition of the term "active ingredient."

Moreover, it was unnecessary for the Court to address the definition of "active ingredient" in Glaxo because, unlike here, the determination of the active ingredient was not in dispute. At the outset, the Federal Circuit observed that "[i]t is undisputed that cefuroxime axetil is the active ingredient of CEFTIN[®] tablets." Id. at 394. (The Federal Circuit also observed that cefuroxime axetil is the ester of the underlying organic acid, cefuroxime.) Thus, the only

issue in Glaxo was whether a patent protecting the ester CEFTIN® was entitled to a term extension in light of earlier approvals of two salts of the underlying organic acid, cefuroxime. The Federal Circuit concluded that the extension was permissible because the earlier salts were neither salts nor esters of the ester CEFTIN®, the "product" for which the extension was sought. Id. at 394.

The most that can be said about Glaxo is that the Federal Circuit acknowledged that the term "product" was not expressly defined by Congress to mean "active moiety" since those words do not appear in section 156(f)(2). However, Glaxo does not hold that the term "active ingredient" as used in section 156(f)(2) does not mean "active moiety." Indeed, the Federal Circuit later accorded the term "active ingredient" with that precise definition in Pfizer. See Pfizer, 359 F.3d at 1366. Accordingly, the USPTO's determination that the '579 patent is ineligible is supported by, and consistent with, Glaxo.

Third, Somerset asserts that the USPTO's reliance on Pfizer was not appropriate because, procedurally, Pfizer involved an enforcement action as opposed to an entitlement determination, as in this case. Br. at 14. Somerset's procedural distinction is misplaced. Pfizer is applicable here because it addresses not only the exact statutory provision in dispute—section 156—and not only the exact subparagraph in dispute—section 156(f)(2)—but also the exact terms in dispute— "product" and "active ingredient." The terms of section 156 should be accorded the same meaning whether in the context of assessing enforcement or entitlement. Indeed, the normal rule of statutory construction assumes that "'identical words used in different parts of the same act are intended to have the same meaning.'" Sorenson v. Sec'y of the Treasury of the United States, 475 U.S. 851, 860 (1986) (quoting Atl. Cleaners & Dryers, Inc. v. United States, 286 U.S. 427, 433 (1932)). And, it makes little sense to accord "product" and "active ingredient" one meaning

for enforcement and a different meaning for entitlement when these terms appear in the same statute.

Fourth, Somerset contends that the USPTO's interpretation of "active ingredient" as "active moiety" does not make sense if applied throughout section 156. Br. at 15. In particular, Somerset points to section 156(a)(4), which requires "the product [to have been] subject to a regulatory review period before its commercial marketing or use." 35 U.S.C. § 156(a)(4). As an initial point, Somerset appears to misapprehend the definition of "active ingredient" applied by the USPTO. Contrary to Somerset's characterization, the USPTO did not treat "active ingredient" as "mean[ing] all forms of a molecule." Br. at 15. Rather, the USPTO applied "active ingredient" to mean the single molecule responsible for the physiological or pharmacological action of the drug, regardless how formulated (as a base like selegiline in EMSAM® or as a hydrochloride salt like selegiline hydrochloride in ELDEPRYL® and ZELAPAR®). Next, the USPTO's application follows the Federal Circuit's definition and makes complete sense in section 156(a)(4). If the single molecule responsible for the action of the drug did not undergo regulatory review before its commercial marketing or use, then a patent protecting such a molecule would not be eligible for a patent term extension under section 156. Accordingly, defining "active ingredient" as "active moiety" logically follows throughout section 156.

Finally, Somerset claims that the USPTO's interpretation of "active ingredient" as "active moiety" is at odds with the legislative history of section 156. Br. at 15-16. The legislative history of section 156 reveals the opposite. In Fisons, the district court explained the legislative purpose of section 156(a)(5)(A):

Upon examination, the specific purpose of Section 156(a)(5)(A) appears to have been relatively narrow—to restore lost patent life only for "pioneer" drugs. A report by the Congressional Office of Technology Assessment ("OTA") to the 97th Congress provided the factual foundation for the restriction of patent restoration benefits to new chemical entities. The OTA report stated: "Although important pharmaceutical innovations may result from new therapeutic applications of existing chemicals . . . many of the pharmaceutical breakthroughs that have occurred have resulted from NCE (new chemical entity) research and the development of NCEs generally has required more time and money than other types of innovation and has involved greater risks." The House Committee on Energy and Commerce explained that the bill "requires extensions to be based on the first approval of the product because the only evidence available to Congress showing that patent time has been lost is data on so-called class I, new chemical entity drugs." Thus, Congress' intent was to restore patent life only to new chemical entities. This intention is reflected directly in Section 156(f), which restrictively defines "product" for purposes of Section 156 as the drug's active ingredient.

Fisons, 1988 WL 150851 at * 7 (citing, inter alia, H.R. Rep. No. 97-696) (omission in original).

The district court's discussion of the legislative history reveals that the definition of "active ingredient" as "active moiety," applied by the USPTO, comports with Congress's intent behind section 156(a)(5). That is, a patentee should be permitted to extend the term of a patent covering the "active moiety"—the molecule or ion that causes the physiological or pharmacological action of the drug—only once. Thereafter, a patentee should not be entitled to extend any subsequent patents protecting different uses, dosage forms, and formulations of that "active moiety." Congress decided that any such requests would fail under section 156(a)(5) as not representing the first commercial marketing or use of the "product." Here, as explained above, that is precisely what Somerset is attempting to do with EMSAM® (active ingredient selegiline) when Somerset admits that ELDEPRYL® (active ingredient selegiline formulated as a hydrochloride salt) was previously approved. Thus, Somerset's construction of "product" as meaning "the single, specific 'active ingredient' of a new drug actually present in the drug product," Br. at 15, is counter to the legislative intent behind section 156(a)(5).

17

2.    **Somerset Will Not Suffer The Irreparable Harm It Alleges If Its '579 Patent Is Not Extended on an Interim Basis Because EMSAM® is Protected in Other Ways**

Somerset asserts that the expiration of its '579 patent on August 18, 2007, will result in "severe and irreparable" harm because it is an open legal question whether a patent can ever be revived once it has expired. Br. at 16. The USPTO agrees that the law is unsettled as to whether the '579 patent can be revived once it expires. But, the expiration of the '579 patent is not the death toll for EMSAM® that Somerset would like this court to believe it is. Somerset has three years of FDA-granted marketing exclusivity for EMSAM® until February 27, 2009. R305. Additionally, Somerset fails to mention that it has two other patents providing protection for EMSAM®, namely, U.S. Patent No. 7,070,808 and U.S. Patent No. 7,150,881. Somerset listed those patents in the Orange Book, and in doing so, certified that they cover EMSAM®. (See D.I. 14, Ex. 5). Both patents are in force until 2018. Hence, Somerset may rely on other measures to prevent others from marketing EMSAM® after expiration of the '579 patent.

3.    **The USPTO Is Concerned about Injury to the Public Resulting from an Interim Extension of the '579 Patent**

Somerset is correct that USPTO itself will not suffer harm, monetarily or otherwise, if ordered by this Court to issue an interim extension of the '579 patent. Br. at 17. Nor will the USPTO itself gain a proprietary or pecuniary benefit if the Court declines to order the USPTO to extend the '579 patent on an interim basis. Nevertheless, the USPTO, as a government agency, is charged with protection of the public at large. See e.g., Mowry v. Whitney, 81 U.S. (1. Wall.) 434, 441 (1871) ("The general public is left to the protection of the government and its officers."); United States v. Am. Bell Tel. Co., 167 U.S. 224, 265 (1897) (observing that the government has an obligation to protect the public). In that capacity, the USPTO believes that the public will be injured by an interim extension as explained in the next section.

18

**4.**    **The Public Interest Does Not Favor Injunctive Relief in the Form of an Order Requiring the Office to Issue an Interim Extension for the '579 Patent Through Final Judicial Review**

Somerset argues that the public will not be harmed if the '579 patent is extended on an interim basis pending final judicial review. Br. at 18-19. In making that argument, Somerset attempts to circumvent the intent of the Hatch Waxman Amendments and to establish bad precedent.

Stepping back to review the basic extension provisions in section 156, the longest that any patent may be extended is five years. See 35 U.S.C. § 156(g)(6)(A) ("If the patent involved was issued after the date of the enactment of this section, the period of extension determined on the basis of the regulatory review period determined under any such paragraph may not exceed five years."). The extension period is measured from the "original expiration date of the patent." 35 U.S.C. § 156(a). The length of any interim extension counts towards whatever underlying term extension may ultimately be granted, with the sum of both extensions, the interim and underlying term extension, not to exceed five years.

Now, turning to Somerset's argument, it asks this Court to order the USPTO to issue an interim extension of the '579 patent, when the USPTO has determined that the '579 patent is not eligible for an underlying patent term extension, so that it may challenge that denial. If the Court orders the USPTO to grant an interim extension, and this Court later affirms the USPTO's denial, then Somerset may receive extension benefits that it is not entitled to receive. What is more, Somerset could receive those benefits for the maximum extension period allowable under the statute (five years) simply by keeping its challenge alive in the courts through an appeal to the Federal Circuit and through a certiorari petition to the Supreme Court. And, in the end, Somerset is not likely to succeed for reasons explained above. See infra, Section V, A, 1. Thus,

the public would be significantly harmed if this Court orders the USPTO to issue an interim extension of the '579 patent.

In sum, Somerset cannot show that the first, second, or fourth preliminary injunction factor weighs in its favor. The Federal Circuit has explained: "Our case law and logic both require that a movant cannot be granted a preliminary injunction <u>unless it establishes both of the first two factors,</u> <u>i.e.,</u> likelihood of success on the merits and irreparable harm." <u>Amazon.com, Inc. v. Barnesandnoble.com Inc.,</u> 239 F.3d 1343, 1350 (Fed. Cir. 2001) (emphasis added). On the foregoing, Somerset is not entitled to injunctive relief. Consequently, in the event the Court accepts Somerset's argument that section 705 of the APA empowers it to order agency action in a specific way, this Court nevertheless should decline to issue a preliminary injunction ordering the USPTO to grant an interim extension for the '579 patent.

## VI.    CONCLUSION

Somerset's second preliminary injunction motion is not proper because Somerset has not amended its complaint to challenge the USPTO's final agency decision, which denied Somerset's Patent Term Extension Application and its Interim Extension Application. That decision is at the heart of Somerset's second preliminary injunction motion. Accordingly, until the Court grants leave for Somerset to amend its complaint to bring the USPTO's final agency decision before the Court, the Court should not rule on the motion.

Even if Somerset had amended its complaint bringing the USPTO's final agency decision before this Court, Somerset asks this Court to issue a preliminary injunction ordering the USPTO to grant an interim extension under a statute that does not authorize the USPTO to do so. Somerset relies upon 5 U.S.C. § 705, but that statutory provision says nothing about interim extensions. Congress authorized the USPTO to issue an interim extension only under 35 U.S.C.

§ 156(e)(2), and the Federal Circuit has determined that the conditions set forth in section 156(e)(2) for an interim extension are not satisfied here. See Somerset, No. 2007-1447, slip op. at 3. Thus, the Federal Circuit's affirmance of this Court's denial of Somerset's first preliminary injunction motion makes clear that no interim extension can be granted, regardless whether couched in terms of section 156(e)(2) or 5 U.S.C. § 705. Id.

Finally, even if Somerset could avail section 705 to secure the relief it wants, Somerset cannot establish that the requisite preliminary injunction factors are in its favor. That is, Somerset cannot show a reasonable likelihood of success on the merits, that it will be irreparably harmed if the injunction is not granted, or that an injunction is in the public interest.

For these reasons, this Court should dismiss Somerset's second preliminary injunction motion, (D.I. 22), or in the alternative, deny it. A proposed order is attached.

<div style="margin-left:40%">

Respectfully submitted,

COLM CONNELLY
United States Attorney

By:    /s/Patricia C. Hannigan
       Patricia C. Hannigan
       Assistant United States Attorney
       Delaware Bar No. 2145
       1007 Orange Street, Suite 700
       Wilmington, Delaware  19899-2046
       (302) 573-6277
       Patricia.Hannigan@usdoj.gov

</div>

DATE: August 2, 2007

OF COUNSEL:          Stephen Walsh
                           Acting Solicitor
                           United States Patent and Trademark Office
                           Janet Gongola
                           Nathan Kelley
                           William LaMarca
                           Associate Solicitors
                           United States Patent and Trademark Office
                           P.O. Box 15667
                           Arlington, Virginia 22215

                           Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I, Patricia C. Hannigan, hereby certify that on **August 2, 2007**, I electronically filed the foregoing **DIRECTOR'S OPPOSITION TO SOMERSET'S SECOND MOTION FOR PRELIMINARY INJUNCTION** with the Clerk of Court using CM/ECF which will send electronic notification of such filing to the following:

**David E. Wilks, Esquire**
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
(302) 778-7560
Fax: (302) 428-3996
dwilks@reedsmith.com

                    COLM F. CONNOLLY
                    United States Attorney

                    By: /s/Patricia C. Hannigan
                        Patricia C. Hannigan
                        Assistant United States Attorney
                        Delaware Bar I.D. No. 2145
                        The Nemours Building
                        1007 Orange Street, Suite 700
                        P. O. Box 2046
                        Wilmington, DE 19899-2046
                        (302) 573-6277
                        Patricia.Hannigan@usdoj.gov

# Exhibit 1

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1447

SOMERSET PHARMACEUTICALS, INC.,

Plaintiff-Appellant,

v.

JON W. DUDAS,
in his official capacity as Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office,

Defendant-Appellee.

John M. Faust, Vinson & Elkins L.L.P. of Washington, DC, for plaintiff-appellant. With him on the brief were Tracey B. Davies and Margaret J. Sampson, of Austin, Texas.

Stephen Walsh, Acting Solicitor, Solicitor's Office, United States Patent and Trademark Office, of Arlington, Virginia for defendant-appellee.   With him on the brief were Nathan K. Kelley, Janet Gongola, and William LaMarca, Associate Solicitors.

Appealed from:  United States District Court for the District of Delaware

Chief Judge Gregory M. Sleet

Note:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1447

SOMERSET PHARMACEUTICALS, INC.,

Plaintiff-Appellant,

v.

JON W. DUDAS,

in his official capacity as Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office,

Defendant-Appellee.

---

DECIDED:  July 31, 2007

---

Before MICHEL, <u>Chief Judge</u>, PROST, and MOORE, <u>Circuit Judges</u>.

MOORE, <u>Circuit Judge</u>.

Somerset Pharmaceuticals, Incorporated (Somerset) appeals from an order by
the United States District Court for the District of Delaware denying Somerset's request
for a preliminary injunction.  <u>See</u> <u>Somerset Pharms., Inc. v. Dudas</u>, No. 07-279 (D. Del.
Jun. 29, 2007).  We dismiss Somerset's request to compel the United States Patent and
Trademark Office (PTO) to issue a decision as moot, otherwise we <u>affirm</u>.

## BACKGROUND

Somerset is owner of United States Reissue Patent No. RE 34,579 (the '579
patent).  That patent is currently set to expire on August 18, 2007.  Somerset obtained
marketing approval from the Food and Drug Administration (FDA) for its drug product

EMSAM®, a transdermal pharmaceutical patch that includes selegiline as the active ingredient. A method of treating depression using that patch is allegedly covered by the '579 patent. Somerset filed a Patent Term Extension Application with the PTO on April 27, 2006, seeking to extend the term of the '579 patent under 35 U.S.C. § 156(d)(1). On February 21, 2007, Somerset filed a request for an interim extension under 35 U.S.C. § 156(e)(2).

Shortly thereafter, Somerset filed suit in the United States District Court for the District of Delaware seeking to compel the Director of the PTO to act on, and grant, its request for interim extension. See Compl. at 8-9, Somerset Pharms., No. 07-279 (D. Del. May 22, 2007) (prayer for "an order compelling the Director to immediately grant an interim extension of the term of the '579 patent for a period of one year . . . or until a final, non-appealable judicial decision . . . is obtained . . ."). Somerset also filed a motion for a preliminary injunction in accordance with the prayer for relief made in its complaint. The district court denied that motion on June 29, 2007.

Somerset filed a motion with this court on July 11, 2007 seeking to expedite the briefing schedule for its appeal, which we granted on July 12. That same day, the Director denied both Somerset's application for interim patent term extension and its application for term extension on the merits. Briefing was completed in this matter on July 27, 2007. We have jurisdiction under 28 U.S.C. § 1292(c)(1) (2006).

## DISCUSSION

Somerset was originally seeking an order compelling the Director to issue a decision on its request for interim extension under 35 U.S.C. § 156(e)(1). Because the Director issued his decision on July 12, 2007, Somerset has withdrawn the portion of its

appeal that sought to compel the Director to act on its request for interim relief. Therefore, we dismiss that aspect of Somerset's appeal as moot.

Nonetheless, Somerset continues to press its appeal regarding the denial of injunctive relief compelling the Director to grant its request for an interim extension. We review the denial of a preliminary injunction for an abuse of discretion. Ranbaxy Pharms., Inc. v. Apotex, Inc., 350 F.3d 1235, 1239 (Fed. Cir. 2003). To establish entitlement to a preliminary injunction a movant must establish a reasonable likelihood of success on the merits. Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319, 1325 (Fed. Cir. 2004) ("[A] movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits."). Somerset cannot establish a reasonable likelihood of success on the merits in this case.

Section 156(e)(2) provides

> If the term of a patent for which an application has been submitted under subsection (d)(1) would expire before a certificate of extension is issued or denied under paragraph (1) respecting the application, the Director shall extend, until such determination is made, the term of the patent for periods of up to one year if he determines that the patent is eligible for extension.

35 U.S.C. § 156(e)(2). This section only gives the Director the authority to extend a patent's term beyond that provided for by section 154 when the patent for which a term extension is sought "would expire before a certificate of extension is . . . denied." Id. at § 156(e)(2).

In this case, the Director has denied Somerset's application for extension. Therefore, the Director has no statutory authority to issue the interim extension Somerset seeks. Thus, Somerset has not demonstrated a reasonable likelihood of

success on the merits.[1]    Because the district court did not abuse its discretion in denying Somerset's motion for a preliminary injunction that denial is affirmed.

<div align="center">COSTS</div>

Each party shall bear its own costs.

---

[1]    Nothing in this opinion is intended to address any claim that Somerset may have on the underlying merits of the Director's July 12, 2007 denial of its request for patent term extension under 35 U.S.C. § 156(e)(1).

2007-1447                                    4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

SOMERSET PHARMACEUTICALS, INC.     )
                                       )
              Plaintiff,              )
                                         )
            v.                   )   Civil Action No. 07-279 (GMS)
                                         )
JON W. DUDAS, in his official capacity       )
as Under Secretary of Commerce for          )
Intellectual Property and Director of the       )
United States Patent and Trademark Office,   )
                                         )
            Defendant.           )
_____ )

**[PROPOSED] ORDER**

Upon consideration of the Plaintiff's Second Motion for a Preliminary Injunction,

(D.I. 22), it is hereby ORDERED that the Motion is DISMISSED/DENIED.

Dated:_____

                                            _____
                                            HONORABLE GREGORY M. SLEET
                                            Chief District Judge
                                            United States District Court